IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 (Involuntary) |
| | ) | |
| TAGNETICS INC., | ) | Case No. 19-30822 |
| | ) | |
| Alleged Debtor. | ) | |
| | ) | |

**TAGNETICS INC.'S MOTION TO DISMISS AND COMPEL ARBITRATION
AS TO ALLEGED CLAIMS FILED BY ALLEGED INDIVIDUAL CREDITORS
KAYSER, EARLEY, AND HAGER**

Tagnetics, Inc. ("Tagnetics"), by and through its undersigned counsel, hereby submits this Motion to Dismiss and Compel Arbitration as to the Alleged Claims Filed by Alleged Individual Creditors Kayser, Earley, and Hager.  As explained in greater detail below, the claims asserted by Kenneth Kayser ("Kayser"), Ronald E. Earley ("Earley"), and Jonathan Hager ("Hager") seek the payment of wages based on the terms of their employment agreements, but those employment agreements all contain provisions that mandate any claims arising under the agreements are to be decided in arbitration.  Accordingly, those claims should be dismissed and adjudicated in arbitration, not before this Court.

1.     This case was commenced on or about March 19, 2019 when (1) Kayser, (2) Earley, (3) Hager, (4) Robert Strain ("Strain"), (5) Kayser Ventures Ltd. ("KVI"), and (6) S-Tek Inc. ("STI") (collectively "Petitioning Creditors") filed an Involuntary (bankruptcy) Petition Against a Non-Individual, with the non-individual being Tagnetics.

2.     The alleged corporate creditors, KVI and STI, filed claims for unpaid equipment rental and an unpaid invoice, respectively.

3.     The alleged individual creditors, Kayser, Earley, Hager, and Strain, filed claims for unpaid wages.  *See* Exhibit 1 (Response to Interrogatories and Requests for Production of

{01335756-1}

Documents from Kenneth Keyser) at Answer to Interrogatory No. 3; Exhibit 2 (Response to

Interrogatories and Requests for Production of Documents from Ronald E. Earley) at Answer to

Interrogatory No. 3; Exhibit 3 (Response to Interrogatories and Requests for Production of

Documents from Jonathan Hager) at Answer to Interrogatory No. 3; Exhibit 4 (Response to

Interrogatories and Requests for Production of Documents from Robert Strain).[1]

4.     Kayser, Earley, and Hager all executed Employment, Non-Competition and

Proprietary Rights Agreements with Tagnetics (collectively, the "Employment Agreements" and,

individual, each being an "Employment Agreement").  All the Employment Agreements include

identical arbitration clauses, which provide in relevant part:

> 5.7  Arbitration. If there is any dispute between the parties concerning
> any matter relating to this Agreement, the exclusive basis for adjudication
> of this Agreement (except with respect to the performance of the
> covenants and obligations as set forth in Article IV above) shall be by
> arbitration as detailed herein. Either party may submit the dispute to
> binding arbitration. Any such arbitration proceeding will be conducted in
> Dayton, Ohio and except as otherwise provided in this Agreement, will be
> conducted under the auspices of JAMS/Mediation, Inc., in accordance
> with the then current Commercial Arbitration Rules of the American
> Arbitration Association. The arbitrator shall allow such discovery as the
> arbitrator determines appropriate under the circumstances. The arbitrator
> shall determine which party, if either, prevailed and shall award the
> prevailing party its costs. Each party will bear his, her or its respective
> attorneys' fees. The award and decision of the arbitrator shall be
> conclusive and binding on all parties to this Agreement and judgment on
> the award may be entered in any court of competent jurisdiction. The
> parties acknowledge and agree that any arbitration award may be enforced
> against either or both of them in a court of competent jurisdiction and each
> waives any right to contest the validity or enforceability of such award.
> The parties further agree to be bound by the provisions of any statute of
> limitations which would be applicable in a court of law to the controversy
> or claim which is the subject of any arbitration proceeding initiated under
> the Agreement. The parties further agree that they are entitled in any
> arbitration proceeding to the entry of an order, by a court of competent

---

[1] A bona fide dispute exists as to the merits of the claims asserted by the alleged corporate
creditors and the alleged individual creditors, both as to the existence of the alleged liability and,
if there is liability, which there is not, the amount of the claimed liability.

> jurisdiction pursuant to an opinion of the arbitrator, for specific
> performance of any of the requirements of this Agreement.

*See* Exhibit 5 (Kayser Employment Agreement); Exhibit 6 (Earley Employment Agreement);

Exhibit 7 (Hager Employment Agreement).

5.     "Congress enacted the FAA [Federal Arbitration Act] in 1925 pursuant to its

power to regulate interstate commerce 'to ensure judicial enforcement of privately made

agreements to arbitrate,' and 'to overrule the judiciary's longstanding refusal to enforce

agreements to arbitrate.'" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006)

(quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985)).  "The FAA creates a

body of federal substantive law of arbitrability, applicable to any arbitration agreement within

the coverage of the Act." *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th

Cir. 2012) (quotations omitted).

6.     Under the FAA, "a written agreement to arbitrate disputes which arises out of a

contract involving transactions in interstate commerce shall be valid, irrevocable, and

enforceable, save upon such ground as exists at law or in equity for the revocation of any

contract." *Sicherman v. World Auto Network Inc. (In re McZeal)*, 2017 Bankr. LEXIS 1458, at

*13-14 (N. Dist. Ohio May 31, 2017) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.

2000) (quoting 9 U.S.C. § 2)).  "When asked by a party to compel arbitration under a contract, a

federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Id.*

7.     A federal court in the jurisdiction of the United States Court of Appeals for the

Sixth Circuit must answer four questions when deciding whether to grant a motion to compel

arbitration:  (1) whether the parties agreed to arbitration; (2) the scope of the arbitration

agreement; (3) whether Congress intended for any asserted statutory claims not to be subject to

arbitration; and (4) whether to stay remaining claims if only some of the claims in the proceeding

{01335756-1}

are subject to arbitration.  *Sicherman*, 2017 Bankr. LEXIS 1458 at *14 (citing *Uszak v. AT&T Mobility Servs. LLC*, 658 F. App'x 758, 761 (6th Cir. 2016)).  The answer to each of these four questions in this case leads only to one conclusion – that the claims asserted by Kayser, Earley, and Hager all should be dismissed and referred to arbitration for resolution, as opposed to any federal or state court.

8.     As to the first question, there can be no dispute that Kayser, Earley, and Hager all agreed to submit claims under their Employment Agreements to arbitration.  Section 5.7 of each Employment Agreement clearly and unequivocally states in pertinent part that "[i]f there is any dispute between the parties concerning any matter relating to this [Employment] Agreement, the exclusive basis for adjudication of this [Employment] Agreement . . . shall be by arbitration."  *See* Exs. 1-3 at Section 5.7.

9.     As for the second question, there can be no dispute that Kayers's, Earley's, and Hager's claims all arise out of their Employment Agreements and, thus, fall within the scope of the arbitration clause.  Kayser, Earley, and Hager all assert claims for unpaid wages based on their respective Employment Agreements.  *See* Ex. 1 at Answer to Interrogatory No. 3 (stating "[m]y employment contract . . . show[s] unpaid salary of $407,580" and "[o]utstanding deferred salary of $455,000" as well as "unpaid expenses and insurance stipend"); Ex. 2 at Answer to Interrogatory No. 3 (stating "[m]y employment contract . . . show[s] unpaid salary of $570,313.00" and "unpaid expenses" as well as "I am probably due salary"); Ex. 3 at Answer to Interrogatory No. 3 (stating "Tagnetics owes Jonathan Hager $70,644.79" pursuant to the "Employment, Non-Competition and Proprietary Rights Agreement" entered into "on July 5, 2013 with an agreed Base Salary of $155,000 per annum"); *see also* Involuntary Petition Against a Non-Individual at 3 (asserting "unpaid wages" due to Kenneth W. Kayser, asserting

4

"employment agreement unpaid salary" due to Ronald E. Earley, and (asserting "employment agreement unpaid salary" due to Jonathan Hager). Thus, there is no dispute that the claims for unpaid wages and expenses arise out of the Employment Agreements, which contain arbitration provisions, and, thus, their claims are subject to the arbitration clauses.[2]

10.    The third question – whether Congress intended for any asserted statutory claims are not subject to arbitration – involves a more in-depth inquiry and analysis. "Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *In re No Place Like Home, Inc.*, 559 B.R. 863, 871 (W. Dist. Tenn. Oct. 27, 2016) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). The party opposing arbitration must demonstrate that Congress "intended to limit or prohibit waiver of a judicial forum for a particular claim." *Id.* (citing *McMahon*, 482 U.S. at 227).

11.    The party opposing arbitration may satisfy its burden in one of three ways: "(1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between the arbitration and the statute's underlying purposes." *Id.* ("McMahon Framework"). In this case, neither Kayser, nor Earley, nor Hager can meet that burden.

12.    "The majority of courts have determined that Congress did not use statutory text or legislative history to expressly limit the FAA's application to the Bankruptcy Code." *In re No Place Like Home, Inc.*, 559 B.R. at 871 (citing *Mintze v. Am. Gen. Fin. Servs.*, 434 F.3d 222 (3d Cir. 2006)); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In the Matter of Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997); *Ackerman & Kuriloff v. Eber*

---

[2] The Employment Agreements not only call for the payment of salary to Kayser, Earley, and Hager, the Employment Agreements also call for the payment of expenses and certain insurance benefits. *See* Exs. 5-7 at Sections 2.4, 2.5, 3.1, 3.2, 3.3, and 3.4.

*(In the Matter of Eber)*, 687 F.3d 1123 (9th Cir. 2012*); Cont'l Ins. Co. v. Thorpe Insulation Co.*

*(In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012); *The Whiting-Turner Contracting*

*Co. v. Elec. Mach. Enter., Inc. (In re Electric Machinery Enterprises, Inc.)*, 479 F.3d 791 (11th

Cir. 2007).  Thus, the first two options under the McMahon Framework are not even available to

Kayser, Earley, and Hager as a matter of law.

13.     That leaves the final prong of the McMahan Framework – whether an inherent

conflict exists between the arbitration and the statute's underlying purposes – as the only

possible option for Kayser, Earley, and Hager, but that prong is not viable either.  "If an inherent

conflict does exist, the court has discretion on the issue of arbitration; but, if there is no inherent

conflict, the court *must* compel arbitration and does not have discretion to decide the issue." *In re*

*No Place Like Home, Inc.*, 559 B.R. at 871 (emphasis added).  In a recent opinion from the

United States Bankruptcy Court for the Northern District of Ohio, the court noted "courts

[generally] find no inherent conflict between arbitration and bankruptcy where the plaintiff's

claims do not implicate an underlying bankruptcy issue, but do find an inherent conflict where

"the claims at the center of the dispute were directly related to the Bankruptcy Code."

*Sicherman*, 2017 Bankr. LEXIS 1458, at *28 (citing *Kiskaden v. LVNV Funding, LLC (In re*

*Kiskaden)*, Case No. 16-20207, Adv. No. 16-2008, 571 B.R. 226, 2017 Bankr. LEXIS 996, 2017

WL 1323409, at *4 (Bankr. E.D. Ky. April 7, 2017)).

14.     In this case, there can be no dispute that the wage claims asserted by Kayser,

Earley, and Hager are unrelated to the Bankruptcy Code; they arise solely out of each of their

Employment Agreements.  At best, the nature of the claims asserted by Kayser, Earley, and

Hager fall within the purview of Ohio's wage payment laws and/or common law breach of

contract claims based on their Employment Agreements.  *See, e.g.*, *Shoots v. IQor Holdings U.S.*

6

*Inc.*, 2015 U.S. Dist. LEXIS 141617, at *26-27 (D. Minn. October 19, 2015) (holding that Ohio's wage law, Ohio Rev. Stat. Ann. § 4113.15, is meant to provide employees with a civil remedy if their employer fails to pay their wages within the prescribed time-frame); *Haines & Co. v. Stewart*, 2001 Ohio Ct. App. LEXIS 597, at *8 (Ohio Ct. App. Feb. 5, 2001) (illustrating an employee's breach of contract claim for employer's failure to pay wages).

15.      The case *In re No Place Like Home, Inc.*, 559 B.R. 863, is instructive here.  In that case, the company, No Place Like Home, Inc., filed Chapter 11 bankruptcy following the filing of numerous arbitration actions against it that alleged the claimants were improperly classified as independent contractors and, thus, were owed overtime wages, among other things. Many of the independent contractor/employee creditors filed claims in the bankruptcy proceeding and moved to compel arbitration, pursuant to the arbitration clauses in their independent contractor agreements.  *Id.* at 867-68.  The court explained that "[s]imply put, the Claimants here merely seek to have their claims based in non-bankruptcy law heard and determined by an arbitrator who specializes in federal wage and hour law. . .  Under these particular facts and circumstances, allowing the parties to proceed to arbitration seemingly would, among other things, be just, speedy and inexpensive in accordance with Fed. R. Bankr. P. 1001 and concomitantly with no appeals." *Id.* at 875.

16.      Although Tagnetics, the alleged debtor in this case, is moving to compel arbitration, rather than the alleged creditors, the logic by the court in *In re No Place Like Home, Inc.*, applies with equal force here.  There is no inherent conflict between arbitration and bankruptcy because Kayer's, Earley's, and Hager's claims are not premised on or related to the Bankruptcy Code.  Accordingly, the Court should grant Tagnetic's Motion to Dismiss and Compel Arbitration.

7

**WHEREFORE**, Tagnetics respectfully requests that this Court dismiss the claims of Kayser, Earley, and Hager, and compel arbitration of their claims, as they agreed in – and is mandated by – their Employment Agreements.  Tagnetics further requests that this Court grant such additional relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ Robert R. Kracht*[3]
Robert R. Kracht (0025574)
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
101 West Prospect Avenue, Suite 1800
Cleveland, Ohio 44115
Telephone:  (216) 696-1422
Facsimile:  (216) 696-1210
Email:  rrk@mccarthylebit.com

and

*/s/ Stephen B. Stern*
Stephen B. Stern, Admitted *Pro Hac Vice*
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
Telephone:  (410) 216-7900
Facsimile:  (410) 705-0836
Email:  stern@kaganstern.com

*Counsel for Alleged Debtor*
*Tagnetics, Inc.*

---

[3] Motion of McCarthy, Lebit, Crystal & Liffman Co. LPA and Robert R. Kracht, Esq. for Leave to Withdraw as Counsel, (doc. 37) is pending before the Court.

{01335756-1}

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, a copy of the foregoing *Motion to Dismiss and Compel Arbitration as to the Alleged Claims Filed Alleged Individual Creditors Kayser, Earley, and Hager* was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email on counsel for Tagnetics, Inc., Stephen Stern, Esq. (Stern@kaganstern.com), Douglas Draper, Esq. (ddraper@hellerdraper.com) and Leslie Collins, Esq. (lcollins@hellerdraper.com), and (iii) by **ordinary U.S. Mail** on June 26, 2019 addressed to:

**Kenneth W Kayser**
PO Box 115
Catawba, VA 24070

**Ronald E. Early**
6429 Winding Tree Drive
New Carlisle, OH 45344

**Jonathan Hager**
842 Paint Bank Road
Salem, VA 24153

**Robert Strain**
427 Artell Street
Marengo, IL 60152

**Stephen Stern, Esq.**
Kagan Stern Marinello & Beard, LLC
238 West Street
Annapolis, Maryland 21401

**Douglas S. Draper, Esq.**
Heller, Draper, Patrick, Horn
650 Poydras Street, Suite 2500
New Orleans, LA 70130

**Leslie A. Collins, Esq.**
Heller, Draper, Patrick, Horn
650 Poydras Street, Suite 2500
New Orleans, LA 70130

**Tagnetics, Inc.**
3415 Route 36
Piqua, OH 45356

*/s/ Robert R. Kracht*
Robert R. Kracht (#0025574)

{01335756-1}