**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| In re: Tagnetics, Inc. | * | Case No. 19-30822 |
| | * | |
| | * | Judge Humphrey |
| | | Chapter 7 |

## TAGNETICS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Alleged Debtor Tagnetics, Inc. ("Tagnetics"), files this Motion to Enforce Settlement Agreement, seeking an order that requires Kenneth W. Kayser ("Kayser"), Ronald E. Earley ("Earley"), and Jonathan Hager ("Hager") (collectively, Kayser, Earley, and Hager shall be referred to herein as the "Remaining Petitioning Creditors") to enter into and abide by the terms of the settlement agreement they reached with Tagnetics to resolve this involuntary proceeding. As explained in greater detail below, Tagnetics and the Remaining Petitioning Creditors reached an agreement to resolve this lawsuit on July 26, but, between the time they reached an agreement and the time it took to draft a definitive settlement agreement, it appears the Remaining Petitioning Creditors had a change of heart and now seek to impose new and additional terms to settle this matter.

### FACTUAL BACKGROUND

The parties commenced settlement discussions in earnest on or about July 19, 2019. *See* Ex. 1 (Email from S. Stern to K. Kayser dated July 19, 2019 at 4:14 pm). On July 20, 2019, the Remaining Petitioning Creditors set forth a detailed proposal that included payments to Kayser ($151,582), Earley ($186,980), and Hager ($148,144). *See* Ex. 1 (Email from K. Kayser to S. Stern dated July 20, 2019 at 4:54 p.m.). The Remaining Petitioning Creditors' July 20 proposal

also included a number of non-monetary terms, as well as other monetary terms, including, but not limited to:

- A mutual release of all issues arising from [the Remaining Petitioning Creditors'] employment by Tagnetics, [the Remaining Petitioning Creditors'] role as directors of Tagnetics, and [the Remaining Petitioning Creditors'] participation in the petition for involuntary bankruptcy,

- An acknowledgement of Kayser's and Earley's stock ownership, confirmation of number of shares, and unrestricted shareholder's rights,

- Agreement that all provisions of [the Remaining Petitioning Creditors'] contracts, including non-compete, have expired or are cancelled[,]

- Acknowledgment of an outstanding loan from Ron Earley to Tagnetics, principal plus interest to be paid upon sale (to be defined) of Tagnetics, Principal is $30,000 and current balance is approximately $60,000[,]

- Acknowledgment of KVL Core Technology License, $250,000 to be paid upon transfer, sale, or license of Tagnetics' shelf tag technology or the sale of the company,

- Acknowledgment of $315,000 of differed [sic] salary to be paid to Kayser upon sale of Tagnetics or other liquidity event.

*See id.* Tagnetics clearly rejected this demand from the Remaining Petitioning Creditors, stating that "the demand [they] put forward [was] not realistic." *See* Ex. 1 (Email from S. Stern to K. Kayser dated July 23, 2019 at 10:46 a.m.).[1]

After Tagnetics rejected the aforementioned demand from the Remaining Petitioning Creditors, the Remaining Petitioning Creditors then followed up with a new demand later that afternoon, stating only, "Here is our offer after your email this morning. Let us know if there is any interest." *See* Ex. 1 (Email from R. Early to S. Stern dated July 23, 2019 at 1:34 p.m.). Notably, the entirety of the remainder of the email consists solely of the following chart:

---

[1] Tagnetics' counsel provided a much more detailed explanation in rejecting the Remaining Petitioning Creditors' demand, most of which is not relevant for purposes of this Motion, but Tagnetics' counsel did recommend to the Remaining Petitioning Creditors that they "can and should seek [their] own counsel." *Id.*

2

|  | Ronald E Earley | Kenneth W Kayser | Jon Hager |
|---|---|---|---|
| Initial Payment | $50,000 | $50,000 | $50,000 |
| Second payment 6 mo. | $25,000 | $25,000 | $25,000 |
| Third payment 12 mo. | $25,000 | $25,000 | $25,000 |
| Balance as a note to be paid upon liquidity event | $86,980 | $51,582 | $48,144 |
|  | $186,980 | $151,582 | $148,144 |

*Id. No other terms or conditions and no reference to an earlier email or previously discussed settlement terms were included* in the Remaining Petitioning Creditors' July 23 offer. *See id.* While the Remaining Petitioning Creditors' July 23 offer was not acceptable to Tagnetics, "th[e] structure [was] more in line with what Tagnetics thinks is feasible, but the initial payment [wa]s way too high." *See* Ex. 1 (Email from S. Stern to R. Earley dated July 24, 2019 at 5:56 p.m.). Tagnetics made a counteroffer, consistent with the structure of what the Remaining Petitioning Creditors proposed (meaning consistent with the payment schedule), but with a lower initial payment, and the sum by which the initial payment was reduced "would be rolled to the final scheduled payment to each of" the Remaining Petitioning Creditors. *Id.* Again, Tagnetics "encourage[d] each of [the Remaining Petitioning Creditors] to seek [their] own legal advice." *Id.* The Remaining Petitioning Creditors rejected Tagnetics' counteroffer, without making a counteroffer of their own. *See* Ex. 1 (Email from R. Earley to S. Stern dated July 24, 2019 at 7:43 p.m.).

Despite not receiving a counteroffer, Tagnetics invited the Remaining Petitioning Creditors to make one. *See* Ex. 1 (Email from S. Stern to R. Earley dated July 25, 2019 at 12:42 p.m.). A short while later, the Remaining Petitioning Creditors made the following offer:

3

|  | Ronald E Earley | Kenneth W Kayser | Jon Hager |
|---|---|---|---|
| Initial Payment | $30,000 | $30,000 | $30,000 |
| Second payment 6 mo. | $30,000 | $30,000 | $30,000 |
| Third payment 12 mo. | $30,000 | $30,000 | $30,000 |
| Balance as a note to be paid upon liquidity event | $96,980 | $61,582 | $58,144 |
|  | $186,980 | $151,582 | $148,144 |

Ex. 1 (Email from R. Earley to S. Stern dated July 25, 2019 1:25 p.m.). Notably, *no other terms or conditions and no reference to any prior email or previously discussed settlement terms were included* in this most recent offer from the Remaining Petitioning Creditors. *See id.* And, notably, the total payments to each of the Remaining Petitioning Creditors remained identical to the previous demand made by the Remaining Petitioning Creditors on July 23, 2019 at 1:34 p.m. *Compare* Ex. 1 (Email from R. Earley to S. Stern dated July 23, 2019 at 1:34 p.m.) *with* Ex. 1 (Email from R. Earley to S. Stern dated July 25, 2019 at 1:25 p.m.).

Tagnetics rejected this July 25 demand, wanting to hear from each of the Remaining Petitioning Creditors as to whether this was the path they wanted to pursue. *See* Ex. 1 (Email from S. Stern to R. Earley dated July 26, 2019 at 8:24 a.m.). Tagnetics again encouraged the Remaining Petitioning Creditors to "seek advice from bankruptcy counsel." *Id.* Then, throughout the day on July 26, 2019, Tagnetics' counsel and Earley spoke numerous times over the course of several hours negotiating a potential settlement. Ultimately, Tagnetics and the Remaining Petitioning Creditors agreed to a settlement, the key terms of which were documented in an email from Tagnetics' counsel at 3:27 p.m. *See* Ex. 1 (Email from S. Stern to R. Earley, with copy to K. Kayser and J. Hager, dated July 26, 2019 at 3:27 p.m.). The email confirming the key terms of the agreement stated the following:

Ron, Ken, and Jon:

4

> Below sets forth the terms of the agreement we reached by phone. Each of you please reply confirming agreement to these terms and then I need you to initiate a call with the court to advise of the settlement (it makes no sense for any of us to have to show up at court on Monday now that we have an agreement in place that will be documented more thoroughly in a settlement agreement. We can work through the written settlement agreement over the weekend.
>
> Key Terms:
>
> Payment of $90,000 total ($30,000 each) within three days of a fully executed agreement.
>
> The remaining schedule of payments as you proposed below,[2] except in 12 and 18 months instead of 6 and 12 months.
>
> Full mutual releases (no carve outs)
>
> Dismissal/withdrawal of claims by each of you to be filed within one day of receiving payment.
>
> I believe that captures the key terms we discussed. Please confirm.
>
> Stephen

*See id.* Hager confirmed the parties' agreement by stating the following in an email: "Mr. Earley is discussing this with the court at this moment. I am responding for Kayser, Earley and Hager saying *we agree to the terms put forth as documented above* [sic]." *See* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 a 3:56 p.m.) (emphasis added). Two minutes after sending that email, Hager followed up with another email to "clarify that [the Remaining Petitioning Creditors] agree to the terms you set forth in your last email and represented below" and below they copied the key terms from Tagnetics' counsel's email at 3:27 p.m. *See* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 at 3:58 p.m.). Then, further confirming the payment terms the parties

---

[2] The schedule of payments below is the schedule of payments that is reflected in the email on July 25, 2019 at 1:25 p.m. *See* Ex. 1.

5

had reached, Hager sent yet another email at 4:42 p.m. that same day *"confirming the following payment schedule and amount as part of this agreement"* which included the following chart:

|  | Timing | Ronald E. Earely | Kenneth W Kayser | Jonathan Hager |
| --- | --- | --- | --- | --- |
| Initial Payment |  | $30,000 | $30,000 | $30,000 |
| 2nd Payment | 12mos from initial payment | $30,000 | $30,000 | $30,000 |
| 3rd Payment | 18mos from initial payment | $30,000 | $30,000 | $30,000 |
| Balance as a note | Paid upon the next liquidity event | $96,980 | $61,582 | $58,144 |
| TOTAL Settlement |  | $186,980 | $151,582 | $148,144 |

*See* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 at 4:42 p.m.) (emphasis added). Notably, *no other terms or conditions and no reference to any prior email or previously discussed terms were included in any of the emails from the Remaining Petitioning Creditors* confirming the key terms of the agreement, and the payment schedule in the last email from the Remaining Petitioning Creditors is exactly as described by Tagnetics' counsel in his email at 3:27 p.m. that same day.

Following these emails, both Tagnetics' counsel and the Remaining Petitioning Creditors reported to the Court that the parties had "reached an agreement to resolve all issues in this case." *See* July 26, 2019 Non-Document Order. As a result, the Court cancelled the then-scheduled hearing on the Remaining Petitioning Creditors' involuntary petition and ordered the parties to file an Agreed Order by August 2, 2019. *Id.*

After dealing with the initial obstacles regarding the Agreed Order the Court learned about during a Status Conference with the parties on August 7, 2019, Tagnetics' counsel sent a draft agreement (the "Settlement Agreement") to the Remaining Petitioning Creditors on August 14, 2019 reflecting the terms to which the parties agreed. *See* Ex. 2 (Email from S. Stern to K. Kayser, R. Earley, and J. Hager, with draft Settlement Agreement attached, dated August 14, 2019 at 6:00 p.m.). The Remaining Petitioning Creditors, however, incorrectly contend that the Settlement

6

Agreement, as drafted, omitted a number of terms. For example, the Remaining Petitioning Creditors contend that a number of other payments must be included in the Settlement Agreement or carved out of the release. *See* Ex. 3 (Email from J. Hager to S. Stern dated August 16, 2019 at 2:19 p.m.) (describing in item number 4 additional monetary payments the Remaining Petitioning Creditors requested); *see also* Ex. 4 (Email from R. Earley to S. Stern dated August 16, 2019 at 11:52 a.m.) (concurring with J. Hager email and referencing an additional $30,000 loan payment).[3] Also by way of example, the Remaining Petitioning Creditors requested a number of carve outs from the release in the Settlement Agreement. *See* Ex. 3 (describing in items 4 and 5 carve outs from the release). Among the requested carve outs from the release is the ability to sue Compass Marketing, Inc. ("Compass"), which currently owns slightly more than 10% of Tagnetics, and owns options and notes that are convertible to preferred stock of Tagnetics that would enable Compass to own more than 37% of Tagnetics. *See* Ex. 3 (requesting in item number 5 carve out to maintain claims against Compass); *see also* Ex. 5 (Declaration of Lou Fernandez, describing Compass' ownership interest in Tagnetics). Compass, however, is an "affiliate" under Ohio law. *See* OHIO REV. CODE ANN. §1334.01 (E), (F) (LexisNexis) (defining an affiliate to be any "person" who "[o]wns, controls, or holds, with the power to vote, ten per cent or more of the outstanding voting securities" and a "person" as "an individual, corporation, . . . association, or other business entity"). The Remaining Petitioning Creditors sought other terms too that were outside the scope of the terms to which the parties agreed. *See, e.g.*, Ex. 3 (requesting an accelerated payment mechanism under certain circumstances in item number 2 and a default judgment mechanism in item number 3, among other terms); Ex. 6 (Email from R. Earley to S. Stern dated August 21, 2019

---

[3] Earley's email is written as if Hager's email had already been sent, but these were the two emails Tagnetics' counsel received that day regarding settlement terms, with the dates and times as reflected.

7

at 7:25 a.m.). Tagnetics responded to these mischaracterizations of the settlement agreement, but it was not enough to get the Remaining Petitioning Creditors to sign on to the terms to which they previously agreed. *See* Ex. 3 (Email from S. Stern to J. Hager dated August 19, 2019 at 7:48 p.m.); Ex. 7 (Email from J. Hager to S. Stern dated August 20, 2019 at 9:23 a.m.). Hence, Tagnetics was left with no alternative but to file this Motion to Enforce Settlement Agreement.

## ARGUMENT

### I. JURISDICTION AND VENUE

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).[4] Venue for this proceeding and this Motion before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. STANDARD FOR ENFORCING SETTLEMENT AGREEMENTS

"A settlement agreement is a type of contract and is governed by reference to state substantive law governing contracts generally." *Cogent Solutions Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) (internal quotations and citations omitted). Here, Ohio contract law should be applied because the Settlement Agreement says it should. *See* Ex. 2 (Settlement Agreement at § 20).

A settlement agreement is a "binding contract designed to terminate a claim by preventing or ending litigation." *R&L Carriers, Inc. v. Emergency Response & Training Sols., Inc.*, 2019-Ohio-3539, ¶ 30 (Ohio Ct. App.) (internal quotations and citations omitted). "[S]ettlement agreements are highly favored in the law." *Cont'l W. Condo. Unit Owners Ass'n v. Howard E. Ferguson*, 660 N.E.2d 431, 432 (Ohio 1996).

---

[4] Tagnetics disagrees that this is a core proceeding, as noted in its Motion to Dismiss [Dkt. No. 44] based on the arbitration provisions in the Remaining Petitioning Creditors' employment agreements.

8

Like any other contract, an enforceable settlement agreement requires "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002) (quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976)). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* "In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange." *Turoczy Bonding Co. v. Mitchell*, 118 N.E.3d 439, 444 (Ohio Ct. App. 2018). "Once there is such a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind." *Id.*

The primary role of the Court in examining a written instrument is to determine and give effect to the intentions of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* (quoting *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411 (Ohio 1987)). The Court must give plain language its ordinary meaning unless "manifest absurdity" results or unless some other meaning is clearly evident from the face of the overall contents of the contract. *Id.* (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978)).

If the contract language is clear and unambiguous, there are no issues of fact to be determined. *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir. 2000) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus, of Ohio*, 474 N.E.2d 271, 272-73 (Ohio 1984)). The language will be enforced as written. *See Ledyard v. Auto Wonders Mut. Ins. Co.*, 739 N.E.2d 1, 3-4 (Ohio Ct. App. 2000). Whether the language of an agreement is ambiguous is a question of law for the Court to decide. *United States v. Donovan*, 348 F.3d 509,

9

512 (6th Cir. 2003). When "there is no dispute as to the terms of the agreement," as is the case here, "[s]ummary enforcement . . . is the *only* appropriate judicial response, absent proof of fraud or duress." *See RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 650 (6th Cir. 2001) (emphasis added).

### III. THE PLAIN LANGUAGE OF THE PARTIES' AGREEMENT INCLUDED THE PAYMENT TERMS AND THE SCOPE OF THE RELEASE

The parties' July 26 term sheet clearly and unambiguously sets forth the payment terms of the parties' agreement and the scope of the parties' release. The parties reported to the Court that they had reached a settlement agreement, and, as a result, the Court cancelled the then-scheduled hearing on the involuntary petition. *See* July 26, 2019 Non-Document Order. It appears that the Remaining Petitioning Creditors are having a case of buyer's remorse, however, as they are now seeking to impose numerous other payments and carve outs to the release that were not included in the parties' agreement.

When a party agrees to receive certain payments to settle a dispute, the Court should enforce that agreement to pay the sum certain to which the parties agreed. *See Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 U.S. Dist. LEXIS 34445, at *7 (N.D. Ohio Mar. 2, 2018) ("Similarly, the record is abundantly clear that Defendants did not include a claw back provision as part of the settlement. Defendants agreed to pay Plaintiffs a sum certain. Nothing in the record of the settlement proceedings suggests that this sum was either per Plaintiff or otherwise dependent on the size of the final Plaintiff class."). The payment terms in this case were set forth, clearly and unambiguously, in an email by Hager, one of the Remaining Petitioning Creditors:

10

|  | Timing | Ronald E. Earely | Kenneth W Kayser | Jonathan Hager |
|---|---|---|---|---|
| Initial Payment |  | $30,000 | $30,000 | $30,000 |
| 2nd Payment | 12mos from initial payment | $30,000 | $30,000 | $30,000 |
| 3rd Payment | 18mos from initial payment | $30,000 | $30,000 | $30,000 |
| Balance as a note | Paid upon the next liquidity event | $96,980 | $61,582 | $58,144 |
| TOTAL Settlement |  | $186,980 | $151,582 | $148,144 |

*See* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 at 4:42 p.m.). Substantively, this email is identical to the one sent by Tagnetics counsel merely one hour and fifteen minutes earlier, with the only difference being that the Hager email included the extended pay dates for the second and third payments in the chart, as opposed to the text of the email. *Compare* Ex. 1 (Email from S. Stern to R. Earley dated July 26, 2019 at 3:27 p.m.) *with* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 at 4:42 p.m.). By seeking the payment for additional claims (e.g., additional loans and other monetary amounts not specifically included in the petition), the Remaining Petitioning Creditors are simply trying to add settlement terms that were not stated in the parties' term sheet and were not agreed to by the parties (and, moreover, prolong litigation against Tagnetics). *See Chao v. Am. Nat'l Fleet Servs.*, No. 1:08-CV-64, 2008 U.S. Dist. LEXIS 51244, at *5 (N.D. Ohio July 3, 2008) ("The facts of this case are analogous to those presented in *Shanker v. Columbus Warehouse Ltd. Partnership*, No. 96APE09-1269, 1997 Ohio App. LEXIS 1241, 1997 WL 142723 (Ohio Ct. App. 1997). In that case, one party attempted to add a term to a settlement agreement. The court enforced the settlement terms as the parties had stated them on the record. *See id.*").

In addition to the payment terms being clear and unambiguous, the scope of the release to which the parties agreed is clear and unambiguous. The parties agreed to "[f]ull mutual releases (no carve outs)." *See* Ex. 1 (Email from J. Hager to S. Stern dated July 26, 2019 at 3:58 p.m.). The Remaining Petitioning Creditors, however, seek multiple carve outs to the release by way of

11

the additional payments they now expect to receive[5] and by excluding Compass from the release. Compass, however, is an affiliate of Tagnetics, as it currently owns slightly more than 10% of Tagnetics, with options and notes convertible to preferred stock that enable Compass to purchase more than 37% of Tagnetics. *See* Ex. 5; *see also* OHIO REV. CODE ANN. §1334.01 (LexisNexis). It is common practice to include in any full release of a business entity a release of the entity's parent companies, subsidiaries, and affiliates (as well as other related individuals, including, but not limited to, officers and directors). Indeed, the same exact release language related to Compass that was included in the Settlement Agreement also was included the settlement agreement Kayser signed on behalf of Kayser Ventures, Ltd.[6] *Compare* Ex. 2 at Sections 4, 5 and 6 (stating the Remaining Petitioning Creditor "hereby releases and discharges Tagnetics, as well as its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities (including specifically Compass Marketing, Inc.)") *with* Ex. 8 at Section 5 (stating Kayser Ventures, Ltd., "hereby releases and discharges Tagnetics, as well as its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities (including specifically Compass Marketing, Inc.)").[7]

---

[5] For the sake of brevity, Tagnetics will not repeat its arguments regarding the impropriety and lack of agreement regarding the additional payments sought by the Remaining Petitioning Creditors.

[6] Although a release of Compass was not specifically set forth in the parties' July 26 term sheet, that is no bar for enforcing the parties' agreement. "An agreement is enforceable if it encompasses the essential elements of the bargain." *Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586, 589 (Ohio Ct. App. 1983). If less essential terms are omitted from an agreement, they may be resolved by "later agreement or judicial resolution." *Id.* Here, the parties' July 26 term sheet clearly sets forth the essential terms of their agreement. Tagnetics merely requests that the Court impose standard release language upon the Remaining Petitioning Creditors – especially since the very same standard release language was included in Tagnetics' settlement with Kayser Ventures, Ltd.

[7] The settlement agreement between Tagnetics and Kayser Ventures, Ltd., S-Tek, Inc., and Robert Strain has been redacted to protect the terms of the agreement from disclosure, other than the pertinent parts of the release.

As for the Remaining Petitioning Creditors' request for a default judgment mechanism in the event that Compass fails to make one of the scheduled payments, such a condition was not included in the parties' term sheet of July 26, 2019 and, thus, it is *not* a term that the parties ultimately agreed to as part of their settlement. *See* Ex. 1. The absence of the default judgment mechanism from the parties' July 26, 2019 term sheet alone is dispositive of the issue.

To the extent that the Remaining Petitioning Creditors point to earlier negotiations where Tagnetics was amenable to a default judgment mechanism, Tagnetics' counsel advised the Remaining Petitioning Creditors of its openness to such a concept *three days earlier*, which was before the Remaining Petitioning Creditors had cut off negotiations all together on July 24. Furthermore, Tagnetics only advised that the parties "can include" a default judgment mechanism in an agreement, but that openness to including such a mechanism was at a time when Tagnetics was insisting on "a modest up front payment." *See* Ex. 3 (Email from S. Stern to J. Hager dated August 19, 2019 at 7:48 p.m.); *see also* Ex. 1 (Email from S. Stern to Remaining Petitioning Creditors dated July 23, 2019 at 10:46 a.m.). Indeed, at the time that Tagnetics noted it was open to including a default judgment mechanism in the event of a missed payment, Tagnetics was trying to negotiate "a modest up front payment" in response to the Remaining Petitioning Creditors' demand for lump sum payments totaling nearly $500,000. *See* Ex. 1 (Email from K. Kayser to S. Stern dated July 20, 2019 at 4:54 p.m.); *see also* Ex. 1 (Email from S. Stern to K. Kayser, R. Earley, and J. Hager dated July 23, 2019 at 10:46 a.m.). To put the negotiation in greater context, the Remaining Petitioning Creditors responded to Tagnetics' request for "a modest up front payment" by demanding a total initial payment of $150,000, which is approximately 67% more than the initial payment to which the parties ultimately agreed. *Compare* Ex. 1 (Email from R. Earley to S. Stern dated July 23, 2019 at 1:34 p.m.) *with* Ex. 1 (Email from J. Hager to S. Stern

dated July 26, 2019 at 4:42 p.m.). Thus, the Remaining Petitioning Creditors' demand for a default judgment mechanism is outside the scope of the parties' agreement, as it discussed that potential term at another time, in a different context, and it was not contemplated or even included in the discussions at the time the parties' agreement was reached and the settlement reported to the Court.

Lastly, there was no discussion or contemplation of an accelerated payment provision in the event of an equity/liquidity event. Thus, the Remaining Petitioning Creditors' request for such a term also is outside the bounds of the parties' Settlement Agreement and is not a basis for the Court to deny this Motion. Accordingly, for the reasons set forth above, the Court should grant this Motion and enforce the parties' settlement as evidenced by the Settlement Agreement attached hereto as Exhibit 2.

### IV.   **TAGNETICS IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES**

"The Sixth Circuit, while interpreting Ohio law, has held that 'Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown' and '[n]either party had acted in bad faith.'" *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 U.S. Dist. LEXIS 34445, at *8 (N.D. Ohio Mar. 2, 2018) (quoting *Rohrer Corp. v. Dane Elec Corp. USA*, 482 F. App'x 113, 117 (6th Cir. 2012)). As a result, "attorney fees are allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement." *Berry v. Lupica*, 965 N.E.2d 318, 323 (Ohio Ct. App. 2011).

As the court in *Wilson* held, "Defendants have forced Plaintiffs to litigate this motion to enforce the settlement. Plaintiffs are therefore entitled to attorney's fees stemming from this additional litigation as compensatory damages." *Wilson*, 2018 U.S. Dist. LEXIS 34445, at *9. The same is true here, except that it is the Plaintiffs (the Remaining Petitioning Creditors) who have

caused the Defendant (Tagnetics) to litigate the issue regarding the terms of the Settlement Agreement. Thus, the Remaining Petitioning Creditors should be obligated to pay Tagnetics' attorneys' fees "stemming from this additional litigation as compensatory damages." *Id.*

## CONCLUSION

For the foregoing reasons, Tagnetics requests that the Court grant this Motion and require the parties to proceed with the Settlement Agreement as written.

Respectfully submitted,

| | |
|---|---|
| ___/s/ Stephen B. Stern___ | ___/s/ Robert R. Kracht___ |
| Stephen B. Stern, Admitted Pro Hac Vice | Robert Kracht (#0025574) |
| Kagan Stern Marinello & Beard, LLC | McCarthy, Lebit, Crystal & Liffman Co., LPA |
| 238 West Street | 101 W. Prospect Avenue, Suite 1800 |
| Annapolis, Maryland 21401 | Cleveland, Ohio 44115 |
| (410) 216-7900 – Telephone | (216) 696-1422 – Telephone |
| (410) 705-0836 – Facsimile | (216) 696-1210 – Facsimile |
| stern@kaganstern.com (email) | rrk@mccarthylebit.com (email) |
| | |
| *Counsel for Alleged Debtor* | *Counsel for Alleged Debtor* |
| *Tagnetics, Inc.* | *Tagnetics, Inc.* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 13, 2019, a copy of the foregoing *Motion to Enforce Settlement Agreement* was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email on counsel for Tagnetics, Inc., Stephen Stern, Esq. (Stern@kaganstern.com), Douglas Draper, Esq. (ddraper@hellerdraper.com) and Leslie Collins, Esq. (lcollins@hellerdraper.com), and (iii) by **ordinary U.S. Mail** on September 13, 2019 addressed to:

Kenneth W Kayser
PO Box 115
Catawba, VA 24070

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

                                                  */s/ Robert R. Kracht*
                                          Robert R. Kracht (#0025574)

01359143