# EXHIBIT 2

**Stephen Stern**

| | |
|---|---|
| **From:** | Stephen Stern |
| **Sent:** | Wednesday, August 14, 2019 6:00 PM |
| **To:** | Ken Kayser; Ronald Earley; ctravlr@comcast.net |
| **Cc:** | Douglas S. Draper (ddraper@hellerdraper.com); Leslie Collins; Robert R. Kracht (rrk@mccarthylebit.com); 'Nicholas R. Oleski (nro@mccarthylebit.com)' |
| **Subject:** | Tagnetics - Settlement Agreement |
| **Attachments:** | Settlement Agreement and Mutual Releases (Kayser, Earley, and Hager) (00073951-4xEC90E).docx; Agreed Order (Dismissing Case) (00075497xEC90E).docx |

Ken, Ron, and Jon:

Attached is a draft of the settlement agreement to resolve the Tagnetics litigation. I also have attached a draft agreed order to dismiss the case, consistent with what was discussed during the Status Conference last week. Please review each carefully and let me know if you have any comments or questions. I will be out of the office tomorrow (Thursday), but I will be able to respond to emails and I will have pockets of time where I can take/make calls during the day.

I look forward to hearing from you.

Stephen



**Stephen B. Stern, Esq.**
stern@kaganstern.com

Kagan Stern Marinello & Beard, LLC
(410) 793-1610 (direct)
(410) 216-7900, ext. 1009
(410) 705-0836 (fax)
238 West Street
Annapolis, Maryland 21401
www.kaganstern.com

## SETTLEMENT AND MUTUAL GENERAL RELEASE AGREEMENT

This SETTLEMENT AGREEMENT AND RELEASE (the "Agreement"), is entered into by and between TAGNETICS, INC. ("Tagnetics"), on the one hand, and KENNETH KAYSER ("Kayser"), RONALD EARLEY ("Earley"), and JONATHAN HAGER ("Hager") on the other hand. Each individual or entity entering into this Agreement may be referred to herein as a "Party" and, collectively, as the "Parties." In addition, Kayser, Earley, and Hager may be referred to herein collectively as the "Alleged Creditors.")

WHEREAS, KVL, S-Tek, and Strain, along with Kayser, Earley, and Hager, along with Kayser Ventures, Ltd. ("KVL"), S-Tek, Inc. ("S-Tek"), and Robert Strain ("Strain"), filed an involuntary bankruptcy proceeding under Chapter 7 of the United States Bankruptcy Code against Tagnetics in the United States Bankruptcy Court for the Southern District of Ohio (Western Division at Dayton), alleging they are creditors of Tagnetics, in a case styled, *In re Tagnetics*, Case No. 19-30822 (hereinafter the "Bankruptcy Proceeding").

WHEREAS, Tagnetics disputes the existence and/or amounts of liability claimed by each of the alleged creditors in the Bankruptcy Proceeding, including specifically each of the Alleged Creditors that are Parties to this Agreement.

WHEREAS, the Parties desire to avoid the greater expense and burden associated with litigating the Bankruptcy Proceeding and have decided to compromise and settle their disputes, claims, and potential claims.

NOW, THEREFORE, in consideration of the promises, representations, covenants, and warranties contained herein, and other good and valuable consideration, the receipt and adequacy of which is acknowledged by each of the Parties, who intend to be legally bound by this Agreement, the Parties state and agree as follows:

1. <u>Payments</u>.

    a. <u>Payment to Kayser</u>. Tagnetics will pay or cause to be paid the following sums to Kayser on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Kayser Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second Kayser Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Kayser Payment"); and (4) $61,582.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Kayser Payment"). The First Kayser Payment, Second Kayser Payment, Third Kayser Payment, and Fourth Kayser Payment may be referred to collectively herein as the "Kayser Payments." All Kayser Payments shall be delivered (i) to P.O. Box 115, Catawaba, Virginia 24070, or (ii) by wire transfer to an account identified in writing by Kayser.

    b. <u>Payment to Earley</u>. Tagnetics will pay or cause to be paid the following sums to Earley on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Earley Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second

Earley Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Earley Payment"); and (4) $96,980.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Earley Payment"). The First Earley Payment, Second Earley Payment, Third Earley Payment, and Fourth Earley Payment may be referred to collectively herein as the "Earley Payments." All Earley Payments shall be delivered (i) to 6429 Winding Tree Drive, Carlisle, Ohio 45344, or (ii) by wire transfer to an account identified in writing by Earley.

        c.      **Payment to Hager**. Tagnetics will pay or cause to be paid the following sums to Hager on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Hager Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second Hager Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Hager Payment"); and (4) $58,144.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Hager Payment"). The First Hager Payment, Second Hager Payment, Third Hager Payment, and Fourth Hager Payment may be referred to collectively herein as the "Hager Payments." All Hager Payments shall be delivered (i) to 2170 River Oaks Drive, Salem, Virginia 24153, or (ii) by wire transfer to an account identified in writing by Hager.

    2.    **Definition of Liquidity Event**. For purposes of this Agreement, the term "Liquidity Event" shall mean the following: (a) when one person or entity directly or indirectly becomes the beneficial owner of more than 50% of the outstanding securities of Tagnetics, provided that the one person or entity does not directly or indirectly own more than 50% of the outstanding securities of Tagnetics on the date that this Agreement becomes fully executed; (b) the consummation of a merger, sale, or consolidation of Tagnetics with/to another company; (c) a sale of substantially all of the assets of Tagnetics; or (d) completion of a plan to liquidate, dissolve, or wind up Tagnetics that was approved by Tagentics' shareholders or Board of Directors.

    3.    **Voluntary Dismissal of Bankruptcy Proceeding**. Kayser, Earley, and Hager shall withdraw their respective claims in the Bankruptcy Proceeding and dismiss the Bankruptcy Proceeding, with prejudice, upon receipt of their respective first payments as described in Section 1 of this Agreement. To this end, within one day (i.e., twenty-four hours) of receipt of their respective first payments (i.e., First Kayser Payment, Earley First Payment, and Hager First Payment), Kayser, Earley, and Hager shall execute the Agreed Order attached hereto as Exhibit A and return the fully executed Agreed Order to Stephen Stern as a .pdf file at stern@kaganstern.com, so that Stephen Stern or any person he designates in his sole discretion can submit the fully executed Agreed Order to the court that upon entry by the court shall result in the dismissal of the Bankruptcy Proceeding, with prejudice.

    4.    **Kayser Releases**. In exchange for the consideration described herein, Kenneth Kayser, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Kenneth Kayser has a controlling interest, hereby releases and discharges Tagnetics, as well as its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities (including specifically

2

Compass Marketing, Inc.), as well as each of their current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any investment, loan, ownership interest, employment relationship, contract, intellectual property, or any other relationship with Tagnetics (or any current or former parent companies, corporate and operating affiliates, subsidiaries, or related entities of Tagnetics, including specifically Compass Marketing, Inc.), whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages; (ii) unpaid notes or other loans, including unpaid interest; (iii) unpaid dividends, profits, or other distributions; (iv) unpaid royalties; (v) breach of contract regarding goods or services provided or rendered or equipment loaned to Tagnetics; (vi) breach of express or implied contract or unjust enrichment; (vii) breach of shareholder rights or interests; (viii) breach of one or more licensing agreements; (ix) fraud, breach of the covenant of good faith and fair dealing, or any other tort theory; (x) violation of any federal, state, or local law, regulation, or public policy; and (xi) any other claim that arises out of or in any way relates to Kayser's business, investment, ownership interest, employment, or other relationship with Tagnetics or any Tagnetics Releasees. Kayser understands that this is a GENERAL RELEASE.

5. Earley Releases. In exchange for the consideration described herein, Ronald Earley, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Ronald Earley has a controlling interest, hereby releases and discharges Tagnetics, as well as its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities (including specifically Compass Marketing, Inc.), as well as each of their current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any investment, loan, ownership interest, employment relationship, contract, intellectual property, or any other relationship with Tagnetics (or any current or former parent companies, corporate and operating affiliates, subsidiaries, or related entities of Tagnetics, including specifically Compass Marketing, Inc.), whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages; (ii) unpaid notes or other loans, including unpaid interest; (iii) unpaid dividends, profits, or other distributions; (iv) unpaid royalties; (v) breach of contract regarding goods or services provided or rendered or equipment loaned to Tagnetics; (vi) breach of express or implied contract or unjust enrichment; (vii) breach of shareholder rights or interests; (viii) breach of one or more licensing agreements; (ix) fraud, breach of the covenant of good faith and fair dealing, or any other tort theory; (x) violation of any federal, state, or local law, regulation, or public policy; and (xi) any other claim that arises out of or in any way relates to Earley's business, investment, ownership interest, employment, or other relationship with Tagnetics or any Tagnetics Releasees. Earley understands that this is a GENERAL RELEASE.

6. <u>Hager Releases</u>. In exchange for the consideration described herein, Jonathan Hager, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Jonathan Hager has a controlling interest, hereby releases and discharges Tagnetics, as well as its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities (including specifically Compass Marketing, Inc.), as well as each of their current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any investment, loan, ownership interest, employment relationship, contract, intellectual property, or any other relationship with Tagnetics (or any current or former parent companies, corporate and operating affiliates, subsidiaries, or related entities of Tagnetics, including specifically Compass Marketing, Inc.), whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages; (ii) unpaid notes or other loans, including unpaid interest; (iii) unpaid dividends, profits, or other distributions; (iv) unpaid royalties; (v) breach of contract regarding goods or services provided or rendered or equipment loaned to Tagnetics; (vi) breach of express or implied contract or unjust enrichment; (vii) breach of shareholder rights or interests; (viii) breach of one or more licensing agreements; (ix) fraud, breach of the covenant of good faith and fair dealing, or any other tort theory; (x) violation of any federal, state, or local law, regulation, or public policy; and (xi) any other claim that arises out of or in any way relates to Hager's business, investment, ownership interest, employment, or other relationship with Tagnetics or any Tagnetics Releasees. Hager understands that this is a GENERAL RELEASE.

7. <u>Tagnetics Releases</u>. In exchange for the consideration described herein, Tagnetics, Inc., on its own behalf and on behalf of its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities, as well as each of their current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers, hereby releases and discharges Kayser, Earley, and Hager, from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any investment, loan, ownership interest, employment relationship, contract, intellectual property, or any other relationship with Tagnetics (or any current or former parent companies, corporate and operating affiliates, subsidiaries, or related entities of Tagnetics, including specifically Compass Marketing, Inc.), whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) breach of employment contract; (ii) breach of express or implied contract or unjust enrichment; (iii) fraud, breach of the covenant of good faith and fair dealing, or any other tort theory; (iv) violation of any federal, state or local law, regulation or public policy; and (v) any other claim that arises out of or in any way relates to Kayser's, Earley's, or Hager's business, investment, ownership interest, employment, or other relationship with Tagnetics or any Tagnetics Releasees. Tagnetics understands that this is a GENERAL RELEASE.

8. **Ownership of Rights Released/Dismissed.** The Parties each represent and warrant that they own and have not sold, assigned, or otherwise transferred any of the rights, interests, or claims they are releasing in connection with this Agreement.

9. **Tax Liability.** To the extent that any of the payments to Kayser, Earley, or Hager reflect the payment of wages, Kayser, Earley, and Hager each acknowledge that they are solely responsible for the payment of any taxes to any taxing authority arising out of or related to the payment of such wages, and Kayser, Earley, and Hager further agree to defend, indemnify, and hold harmless Tagnetics against any claims, including any litigation or government investigations, airing out of or related to the payment or lack of payment for said taxes.

10. **Prior Agreements.** As of the date of this Agreement, to the extent that Tagnetics is in default or has otherwise breached any agreement it has entered into with any of the Alleged Creditors, such default or breach is waived and released in accordance with the terms of this Agreement and Tagnetics' only remaining obligations under such agreements are set forth in this Agreement. In addition, all licenses under any agreements between the Alleged Creditors and Tagentics are current and remain in full force and effect, and Tagnetics' only remaining obligations under such agreements are set forth in this Agreement.

11. **Successors and Assigns.** The rights and obligations under this Agreement shall inure to the benefit of and be binding on the heirs, successors, and assigns of the Parties.

12. **Voidable Agreement.** In the event that Kayser, Earley, and/or Hager refuses or otherwise fails to execute the Agreed Order as prescribed in Section 3 above, Tagnetics, in its sole discretion, may declare this Agreement null and void. In the event that Tagnetics declares this Agreement null and void, within five (5) business days of receiving written notice that the Agreement has been declared null and void, Kayser, Earley, and Hager each shall return to Tagnetics' counsel (Stephen Stern of Kagan Stern, 238 West Street, Annapolis, Maryland 21401), in a check made payable to Tagnetics, Inc., the sum said Party received as a First Payment pursuant to Section 1 of this Agreement (i.e., $30,000.00), and the corresponding releases reflected in Sections 4, 5, 6, and 7 of this Agreement shall be deemed null and void, and Tagnetics shall no longer have any obligation to make any other payments to Kayser, Earley, or Hager pursuant to the terms of this Agreement.

13. **Severance of Unenforceable Provisions.** If any provision of this Agreement is declared void, illegal, or otherwise unenforceable by a court of competent jurisdiction (i.e., not pursuant to Section 12 above), said provision (even if it only constitutes a phrase or words that do not comprise an entire sentence or paragraph) shall be deemed and hereby is severed from this Agreement, and the remaining terms and provisions of this Agreement shall remain in full force and effect and enforced to the fullest extent permitted by applicable law.

14. **Co-Authors and Assistance of Counsel.** Each Party has entered into this Agreement after conferring with its own counsel or having had the opportunity to confer with its own counsel and has signed this Agreement as an act of its own free will. All Parties are deemed to have had sufficient input in drafting this Agreement such that any ambiguity that may exist in this Agreement shall not be construed against one Party as the principal drafter. Kayser, Earley,

5

and Hager each acknowledge that they have been advised on multiple occasions by Tagnetics' counsel to seek legal counsel of their own.

15. No Amendment. This Agreement may not be amended or modified except in a written document signed by each Party.

16. Bankruptcy Determination. The parties acknowledge that any funds paid by Tagnetics to Kayser, Earley, and Hager, may be treated as a preference payment in this case or a later filed bankruptcy case. In the event any such payment is deemed a preference payment, the Party whose payment was treated as a preference payment may still file a claim in the Bankruptcy Proceeding or any subsequent bankruptcy proceeding to be a petitioning creditor, notwithstanding any language to the contrary herein.

17. Prevailing Party Status. None of the Parties shall be deemed a "prevailing party" in connection with any dispute between the Parties up to the date of this Agreement.

18. Waiver. No waiver of any provision of this Agreement shall be effective unless such waiver is set forth in writing and signed by a duly authorized representative of the Party against whom enforcement is sought. Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

19. Admissions. Nothing in this Agreement shall be construed, deemed, or otherwise treated as an admission by or against any of the Parties.

20. Governing Law. This Agreement shall be governed by the laws of the State of Ohio without giving effect to any choice of law or conflict of law provision or rule that would cause the law of any other jurisdiction to apply.

[This space left blank intentionally – see next page for signatures]

By their signatures below, the Parties hereto agree to and confirm that they are bound by the terms of this Agreement.

TAGNETICS, INC.

_____          _____
John White, CEO                                                  Date


KENNETH KAYSER

_____          _____
Kenneth Kayser, for himself                                Date


RONALD EARLEY

_____          _____
Ronald Earley, for himself                                  Date


JONATHAN HAGER

_____          _____
Jonathan Hager, for himself                                Date