## EXHIBIT 4

## SETTLEMENT AND MUTUAL GENERAL RELEASE AGREEMENT

This SETTLEMENT AGREEMENT AND RELEASE (the "Agreement"), is entered into by and between TAGNETICS, INC. ("Tagnetics"), on the one hand, and KENNETH KAYSER ("Kayser"), RONALD EARLEY ("Earley"), and JONATHAN HAGER ("Hager") on the other hand. Each individual or entity entering into this Agreement may be referred to herein as a "Party" and, collectively, as the "Parties." In addition, Kayser, Earley, and Hager may be referred to herein collectively as the "Alleged Creditors."

WHEREAS, KVL, S-Tek, and Strain, along with Kayser, Earley, and Hager, along with Kayser Ventures, Ltd. ("KVL"), S-Tek, Inc. ("S-Tek"), and Robert Strain ("Strain"), filed an involuntary bankruptcy proceeding under Chapter 7 of the United States Bankruptcy Code against Tagnetics in the United States Bankruptcy Court for the Southern District of Ohio (Western Division at Dayton), alleging they are creditors of Tagnetics, in a case styled, *In re Tagnetics*, Case No. 19-30822 (hereinafter the "Bankruptcy Proceeding").

WHEREAS, Tagnetics disputes the existence and/or amounts of liability claimed by each of the alleged creditors in the Bankruptcy Proceeding, including specifically each of the Alleged Creditors that are Parties to this Agreement.

WHEREAS, Earley is the holder of ____ shares of unrestricted common stock in Tagnetics and Kayser is the holder of 59,500 shares of unrestricted common stock in Tagnetics.

WHEREAS, the Parties desire to avoid the greater expense and burden associated with litigating the Bankruptcy Proceeding and have decided to compromise and settle their disputes, claims, and potential claims.

NOW, THEREFORE, in consideration of the promises, representations, covenants, and warranties contained herein, and other good and valuable consideration, the receipt and adequacy of which is acknowledged by each of the Parties, who intend to be legally bound by this Agreement, the Parties state and agree as follows:

1.  Payments.

    a.  Payment to Kayser. Tagnetics will pay or cause to be paid the following sums to Kayser on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Kayser Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second Kayser Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Kayser Payment"); and (4) $61,582.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Kayser Payment"). The First Kayser Payment, Second Kayser Payment, Third Kayser Payment, and Fourth Kayser Payment may be referred to collectively herein as the "Kayser Payments." A Liquidity Event shall trigger the acceleration of any unpaid Kayser Payments. All Kayser Payments shall be delivered (i) to P.O. Box 115, Catawaba, Virginia 24070, or (ii) by wire transfer to an account identified in writing by Kayser.

{00211994-1 }

b. <u>Payment to Earley</u>. Tagnetics will pay or cause to be paid the following sums to Earley on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Earley Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second Earley Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Earley Payment"); and (4) $96,980.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Earley Payment"). The First Earley Payment, Second Earley Payment, Third Earley Payment, and Fourth Earley Payment may be referred to collectively herein as the "Earley Payments." A Liquidity Event shall trigger the acceleration of any unpaid Earley Payments. All Earley Payments shall be delivered (i) to 6429 Winding Tree Drive, Carlisle, Ohio 45344, or (ii) by wire transfer to an account identified in writing by Earley.

c. <u>Payment to Hager</u>. Tagnetics will pay or cause to be paid the following sums to Hager on the following schedule: (1) $30,000.00 within three business days of this Agreement being fully executed by all the Parties (the "First Hager Payment"); (2) $30,000.00 within twelve months of this Agreement being fully executed by all the Parties (the "Second Hager Payment"); (3) $30,000.00 within eighteen months of this Agreement being fully executed by all the Parties (the "Third Hager Payment"); and (4) $58,144.00 within fifteen days of Tagnetics experiencing a Liquidity Event (the "Fourth Hager Payment"). The First Hager Payment, Second Hager Payment, Third Hager Payment, and Fourth Hager Payment may be referred to collectively herein as the "Hager Payments." A Liquidity Event shall trigger the acceleration of any unpaid Hager Payments. All Hager Payments shall be delivered (i) to 842 Paint Bank Road, Salem, Virginia 24153, or (ii) by wire transfer to an account identified in writing by Hager.

2. <u>Definition of Liquidity Event</u>. For purposes of this Agreement, the term "Liquidity Event" shall mean the following: (a) when one person or entity directly or indirectly becomes the beneficial owner of more than 50% of the outstanding securities of Tagnetics, provided that the one person or entity does not directly or indirectly own more than 50% of the outstanding securities of Tagnetics on the date that this Agreement becomes fully executed; (b) the consummation of a merger, sale, or consolidation of Tagnetics with/to another company; (c) a sale of substantially all of the assets of Tagnetics; or (d) completion of a plan to liquidate, dissolve, or wind up Tagnetics that was approved by Tagnetics' shareholders or Board of Directors.

3. <u>Voluntary Dismissal of Bankruptcy Proceeding</u>. Kayser, Earley, and Hager shall withdraw their respective claims in the Bankruptcy Proceeding and dismiss the Bankruptcy Proceeding, , upon receipt of their respective first payments as described in Section 1 of this Agreement and receipt of Tagnetics' signature to this Agreement. The Order must expressly reserve the rights of the Alleged Creditors to bring the proceeding back before the court in the event Tagnetics does not complete Payments, or otherwise defaults under this Agreement To this end, within one day (i.e., twenty-four hours) of receipt of their respective first payments (i.e., First Kayser Payment, Earley First Payment, and Hager First Payment), Kayser, Earley, and Hager shall execute the Agreed Order attached hereto as Exhibit A and

> **Comment [CMB1]:** Not attached. This must be reviewed by all parties before this Agreement can be finalized for signature.

{00211994-1}   2

return the fully executed Agreed Order to Stephen Stern as a .pdf file at stern@kaganstern.com, so that Stephen Stern or any person he designates in his sole discretion can submit the fully executed Agreed Order to the court that upon entry by the court shall result in the dismissal of the Bankruptcy Proceeding, with prejudice.

4. <u>Kayser Releases</u>. In exchange for the consideration described herein, Kenneth Kayser, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Kenneth Kayser has a controlling interest, hereby releases and discharges Tagnetics, , as well its current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any employment relationship, role on the Board of Directors, or Bankruptcy Proceeding with Tagnetics, whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages except the Deferred Salary; (ii) unpaid notes or other loans, including unpaid interest; and (iii) any other claim that arises out of or in any way relates to Kayser's employment, board position, involuntary bankruptcy filing, or other relationship with Tagnetics or any Tagnetics Releasees. Nothing contained herein is intended to terminate Kayser's shareholder rights as provided under the laws of incorporation or the License Agreement as hereinafter defined. Tagnetics acknowledges that Kayser remains owed a deferred salary in the amount of $315,000 immediately due and payable upon a Liquidity Event.

5. <u>Earley Releases</u>. In exchange for the consideration described herein, Ronald Earley, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Ronald Earley has a controlling interest, hereby releases and discharges Tagnetics, , as well as its current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any , employment relationship, role on the Board of Directors, or Bankruptcy Proceeding, , whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages; (ii) unpaid notes or other loans, including unpaid interest, except the Shareholder Loan as hereinafter defined; and (iii) any other claim that arises out of or in any way relates to Earley's employment, board position, involuntary bankruptcy filing, or other relationship with Tagnetics or any Tagnetics Releasees.  Tagnetics acknowledges the outstanding loan to Earley in the original principal balance of $30,000, with interest accruing at __% per anum, in the total outstanding amount of $_____ as of September 11, 2019 ("Shareholder Loan"). Nothing contained herein is intended to terminate Earley's shareholder rights as provided under the laws of incorporation.

6. <u>Hager Releases</u>. In exchange for the consideration described herein, Jonathan Hager, on his own behalf and on behalf his heirs, successors, and assigns, as well as all corporate and operating affiliates and related entities in which Jonathan Hager has a controlling interest, hereby releases and discharges Tagnetics, , as well as its current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers (collectively, the "Tagnetics Releasees"), from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any employment relationship, role on the Board of Directors, or Bankruptcy Proceeding with Tagnetics, whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) unpaid wages; (ii) unpaid notes or other loans, including unpaid interest; and (iii) any other claim that arises out of or in any way relates to Hager's employment, board position, involuntary bankruptcy filing, or other relationship with Tagnetics or any Tagnetics Releasees.

7. <u>Tagnetics Releases</u>. In exchange for the consideration described herein, Tagnetics, Inc., on its own behalf and on behalf of its current and former parent companies, corporate and operating affiliates, subsidiaries, and related entities, as well as each of their current and former directors, officers, shareholders or other equity holders, agents, employees, accountants, attorneys, and insurers, hereby releases and discharges Kayser, Earley, and Hager, from any and all causes of action, claims, debts, costs, liabilities, and demands arising from the beginning of time until the date of this Agreement, including, but not limited to, any and all causes of action, claims, debts, costs, liabilities, and demands arising out of or in any way relating to any investment, loan, ownership interest, employment relationship, contract, intellectual property, or any other relationship with Tagnetics (or any current or former parent companies, corporate and operating affiliates, subsidiaries, or related entities of Tagnetics, including specifically Compass Marketing, Inc.), whether known or unknown, by statute, contract, or otherwise, including, but not limited to, any claims for: (i) breach of employment contract including, but not limited to non-compete and other provisions that would otherwise survive expiration or termination; (ii) breach of express or implied contract or unjust enrichment; (iii) fraud, breach of the covenant of good faith and fair dealing, or any other tort theory; (iv) violation of any federal, state or local law, regulation or public policy; and (v) any other claim that arises out of or in any way relates to Kayser's, Earley's, or Hager's business, investment, ownership interest, employment, or other relationship with Tagnetics or any Tagnetics Releasees. Tagnetics understands that this is a GENERAL RELEASE.

8. <u>Ownership of Rights Released/Dismissed</u>. The Parties each represent and warrant that they own and have not sold, assigned, or otherwise transferred any of the rights, interests, or claims they are releasing in connection with this Agreement. None of the releases contained herein is intended to release or otherwise abrogate the duties, rights, or obligations contained or created by this Agreement.

9. <u>Tax Liability</u>. To the extent that any of the Payments to Kayser, Earley, or Hager reflect the payment of wages, Kayser, Earley, and Hager each acknowledge that they are solely responsible for the payment of any taxes to any taxing authority arising out of or related to the payment of such wages, and Kayser, Earley, and Hager further agree to defend,

indemnify, and hold harmless Tagnetics against any claims, including any litigation or government investigations, airing out of or related to the payment or lack of payment for said taxes.

10. <u>Prior Agreements</u>. As of the date of this Agreement, to the extent that Tagnetics is in default or has otherwise breached any agreement it has entered into with any of the Alleged Creditors, other than the License Agreement and Shareholder Loan, such default or breach is waived and released in accordance with the terms of this Agreement. . Tagnetics acknowledges that pursuant to its obligations under the KVL Core Technology **License Agreement dated** _____ ("License Agreement"), upon a Liquidity Event, or sale or license of Tagnetics' shelf tag technology, it shall pay to Kayser Ventures, LTP, or assigns, $250,000 in full and final satisfaction of its obligations under the License Agreement.

11. <u>Successors and Assigns</u>. The rights and obligations under this Agreement shall inure to the benefit of and be binding on the heirs, successors, and assigns of the Parties.

12. <u>Recitals</u>. The recitals above are hereby incorporated as a part of this Agreement.

13. <u>Severance of Unenforceable Provisions</u>. If any provision of this Agreement is declared void, illegal, or otherwise unenforceable by a court of competent jurisdiction (i.e., not pursuant to Section 12 above), said provision (even if it only constitutes a phrase or words that do not comprise an entire sentence or paragraph) shall be deemed and hereby is severed from this Agreement, and the remaining terms and provisions of this Agreement shall remain in full force and effect and enforced to the fullest extent permitted by applicable law.

14. <u>Co-Authors and Assistance of Counsel</u>. Each Party has entered into this Agreement after conferring with its own counsel or having had the opportunity to confer with its own counsel and has signed this Agreement as an act of its own free will. All Parties are deemed to have had sufficient input in drafting this Agreement such that any ambiguity that may exist in this Agreement shall not be construed against one Party as the principal drafter.

15. <u>No Amendment</u>. This Agreement may not be amended or modified except in a written document signed by each Party.

16. <u>Bankruptcy Determination</u>. The parties acknowledge that any funds paid by Tagnetics to Kayser, Earley, and Hager, will not be deemed a preference payment in this case or a later filed bankruptcy case. In the event any such payment is deemed a preference payment, the Party whose payment was treated as a preference payment may still file a claim in the Bankruptcy Proceeding or any subsequent bankruptcy proceeding to be a petitioning creditor, notwithstanding any language to the contrary herein.

17. <u>Prevailing Party Status</u>. None of the Parties shall be deemed a "prevailing party" in connection with any dispute between the Parties up to the date of this Agreement.

18. <u>Waiver</u>. No waiver of any provision of this Agreement shall be effective unless such waiver is set forth in writing and signed by a duly authorized representative of the Party against whom enforcement is sought. Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

19. <u>Admissions</u>. Nothing in this Agreement shall be construed, deemed, or otherwise treated as an admission by or against any of the Parties.

20. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Ohio without giving effect to any choice of law or conflict of law provision or rule that would cause the law of any other jurisdiction to apply.

[This space left blank intentionally – see next page for signatures]

By their signatures below, the Parties hereto agree to and confirm that they are bound by the terms of this Agreement.

TAGNETICS, INC.

_____     _____
John White, CEO                       Date

KENNETH KAYSER

_____     _____
Kenneth Kayser, for himself           Date

RONALD EARLEY

_____     _____
Ronald Earley, for himself            Date

JONATHAN HAGER

_____     _____
Jonathan Hager, for himself           Date