## Stephen Stern

| | |
|---|---|
| From: | Stephen Stern |
| Sent: | Monday, August 19, 2019 7:48 PM |
| To: | Jon Hager |
| Cc: | Ken Kayser; Ronald Earley |
| Subject: | RE: Settlement Agreement - Requested Changes |

Jon:

Many of the terms included below clearly fall outside the scope of what we agreed to the email exchange we had on July 26, 2019 at 3:56 pm and again at 3:58 pm.

Without going blow by blow, the terms of Paragraph 4 below clearly call for payments that were not included in the July 26 email exchange setting forth the settlement payments. Additionally, those requests for additional payments clearly seek an exception to the full mutual releases (no carve outs). I am not sure how you can now ask for payments that were not previously agreed to and seek exceptions to the full mutual releases (no carve outs).

As for Paragraph 5, Compass is a sizeable shareholder of Tagnetics. It is standard practice when entering into a settlement agreement that a release applies not only to the entity itself, but its parents, subsidiaries, and affiliates. This should come as no surprise at least to Ken, as the same exact language was included in the agreement Tagnetics entered into with KVL. As for the rest of your concerns about the scope of the release, the email exchange on July 26 is pretty clear – "[f]ull mutual releases (no carve outs)." All the exceptions you seek clearly contradict the terms of the term sheet we have. If you did not understand the terms, perhaps you should have sought legal counsel, as I had urged you to do on several occasions while we were negotiating.

As for the request for a default judgment, you are correct that we had discussed that at one point in time. And you are correct that it was in our email exchange on July 23 (three days prior to us entering into an agreement). At the time that Tagnetics offered the default judgment as a potential remedy in the event of a breach, however, Tagnetics offered only "a modest up front payment." At the time, we were discussing a potential "modest up front payment" that cumulatively paid the three of you less than $30,000. As you know, each of you insisted that you would not take less than $90,000 cumulatively up front to settle this case and that is the sum that Tagnetics ultimately agreed to pay. Hence, we did not revisit the default judgment issue.

I do not understand comment number 1 in Ron Earley's email (dated August 16 at 11:52 am) where he said that he does "not expect [his] $30,000 loan and accruing interest to be handled any different than any other company debt, but would like it acknowledged as surviving this agreement." It seems that Ron is asking for some additional payment or a carve out from the full mutual release. If that is the case, that is different than what we agreed to. If I am misunderstanding what is meant by Ron's comment, please clarify.

As for the capacities of the release (the last paragraph of Jon's email below), I think the release is clear and covers the issues you would like covered. If you think it does not, please tell me where you think it is not covered.


EXHIBIT C

I can go on, but I think it would be best to try to get these issues resolved first. I urge you to revisit what we agreed to on July 26 and look at the requests you made in your email below (and Ron's email). We are prepared to file a motion to enforce the settlement agreement, but I hope it does not come to that.

I look forward to your response. If it would be more productive to discuss by phone, please let me know.

Stephen


**From:** Jon Hager <pufferboater@gmail.com>
**Sent:** Friday, August 16, 2019 2:19 PM
**To:** Stephen Stern <Stern@kaganstern.com>
**Cc:** Ken Kayser <drkwkayser@gmail.com>; Ronald Earley <ronald.earley1@gmail.com>
**Subject:** Settlement Agreement - Requested Changes

The following are changes that need to be addressed on the draft agreement. An attorney is reviewing it today also to evaluate some of the finer points. We would like to try and wrap this up today.

1) home address for Jonathan Hager needs to be corrected to 842 Paint Bank Rd, Salem, VA 24153
2) there needs to be language that the outstanding payments are all paid at the liquidity event. If a liquidity event occurs prior to payment #3, the outstanding funds should be part of that fourth payment.
3) there must be language about a default judgement if any payment is missed . You spoke to that in an email on July 23 but we do not see any language to that effect. As you said you want to show evidence Tagnetics is serious about the settlement.
4) At the start of the negotiations, an email from Ken Kayser on July 20 referenced some other agreements that he and Ron have with Tagnetics. He was not requesting that they their payment is accelerated through this agreement, in contrary he was requiring that this agreement did not cancel or affect those agreement. These agreements all had terms for payment upon the sale of Tagnetics and were not part of the Petition for Chapter 7. The Petition was filed due to unpaid salary as per our contracts. Ken and Ron do not want language in this agreement that forgives those other legal documents including a) loan between Ron Earley and Tagnetics for $30,000 which has been on the books for a few years, b) deferred salary agreement between Ken Kayser and Tagnetics that was agreed to upon the formation of the company, c) KVL Core Technology licence agreement (in one section it seems to states all license agreements are discharged and then in item 10 acknowledges the licence agreement is still in effect. Should include reference to the KVL Core Technology License.
5) The release items 4, 5 and 6 have some points in them that are not agreeable to all parties. This agreement is between Tagnetics and Kayser, Hager, Earley and does not need to specifically include Compass Marketing. If Compass is not an operating affiliate then they are not party to this settlement. Ken Kayser is not in agreement to include specific language in these releases including the Tagnetics release. This agreement was to resolve the dispute about our unpaid salaries as described in our employment agreements. These releases are taking very broad strokes that step outside these agreements trying to affect other agreements, loans, shareholders rights etc that are part of other independent agreements executed between Tagnetics and Kayser, Earley.

Ken Kayser requests you rephrase the releases to the language, or similar language, that he included in his email on July 20 stating a mutual release of all issues arising from our employment with Tagnetics, our role as directors of Tagenetics (Kayser, Earley). and our participation in the petition for involuntary bankruptcy.

--
Jon
540-529-6887