# Stephen Stern

| | |
|---|---|
| **From:** | Jon Hager <pufferboater@gmail.com> |
| **Sent:** | Tuesday, August 20, 2019 9:23 AM |
| **To:** | Stephen Stern |
| **Cc:** | Ken Kayser; Ronald Earley |
| **Subject:** | Re: Settlement Agreement - Requested Changes |

Stephen,

We appear to have a misunderstanding on how the negotiations took place. The first offer for settlement came from Ken Kayser on July 20th, 4:54 pm. In that email he laid out the terms that included immediate cash payments, a mutual release of all issues regarding our employment and the petition. He also requested that Tagnetics to acknowledge other independent agreements, independent of employment contracts, that Ron Earley and Ken Kayser have with Tagnetics that have been on the books. He was not requesting any changes to the terms of those agreements just requested Tagnetics understand they will remain in place until whatever future event triggers their settlement.

You responded on July 23, 10:46 am specifically addressing the cash payment portion of the settlement terms stating that Tagnetics did not have that cash on hand at this time. You suggested a modest payment up front followed by scheduled payments. You also included the reference to a default judgement is a payment is missed pointing out this is evidence that Tagnetics is not trying to jerk us around. You did not address the other independent agreements at all (loans, licenses, deferred salary) indicating they were not of issue and therefore we understood they were accepted; they would be acknowledged and would remain in effect until their termination as indicated in those long standing separate agreements.

We responded to your request for structured payments with the proposed payment schedule presented by Ron Earley in his email on July 23, 1:34 pm. The initial payment was $50,000 to each party. This email was specifically addressing the only request you raised in your prior email, the need for a structured payment.

You responded on July 24 at 5:56pm agreeing that the payment schedule was more in line with what Tagnetics thinks is feasible but you countered by adjusting the initial payment down to $5000. There was no reference to the other independent agreements. There was reference to missed payments stating they would be deferred but not excused if the Company did not have the funds at that time.

Ron Earley responded on July 25, 1:25 pm with an adjusted payment schedule, reducing the $50,000 initial payment to $30,000. I believe we were being very reasonable in the negotiations adjusting our requirements in support of Tagnetics trying to move forward. Considering the amount we have been owed for years, the lack of effort by Tagnetics over those years to address the debt and now trusting that Tagnetics would follow through with this payment schedule, I think we have been very supportive in the negotiations.

You responded on July 26 at 8:24 am but only tried to have us reduce the initial payment further by stating that Tagnetics did not have the funds though you did acknowledge they raised the same amount of funds a week earlier to settle with the other petitioning parties.

On July 26 at 3:27 pm you accepted the proposed payment schedule with the adjustment of the second and third payments to 12 and 18 mos. and referred to them as the key terms we were discussing. We had been negotiating the scheduled payment portion of the settlement. There was no reference, dismissal or objection to the request by Ken Kayser to have the deferred salary, the loan and the KVL license agreement remain in place, un affected by this settlement agreement.



1

At 3:58pm I confirmed we agreed to changing the second and third payments to 12 and 18 mos. to help support the chance for Tagnetics to recover. At 4:35pm I restated the table Ron had proposed, editing a typo and changing the second and third payments to 12 and 18 mos. In an effort to make it easier for you to cut and paste in the draft you had proposed to generate over the weekend of July 27 and 28.

It was not until you sent the draft settlement agreement on August 14 at 6 pm that we learned you wanted to eliminate the independent agreements. One involving the personal loan Ron Earley provided to Tagnetics years ago to try and retain employees and operations in an effort to save Tagnetics when it did not have cash. One regarding a deferred salary agreement for Ken Kayser dating back to the formation of Tagnetics when it did not have cash and he agreed to defer salary but support fund raising and product development while Tagnetics tried to get established. THe third agreement, the KVL Core Licensing Agreement appear to remain in place in your draft settlement agreement but in the section for Kayser Release you request Ken waive any demands arising from breach of licensing agreements (viii) but in section 10, where you state all licenses will remain in full force and effect.

In summary, there has not been a request for additional payments. The original request was to leave the other independent agreements in place. Tagnetics never countered that request until the draft agreement. You stated in your response yesterday that Compass is a sizeable shareholder and therefore falls under Tagnetics affiliates or related entities. We do not see the need for a specific call-out for Compass Marketing. You did not revisit the default judgement issue and therefore did not remove it from the negotiations. If you had decided at that time that a default judgment term was to be removed it should have been stated as such. Leaving a previously proposed element of the negotiations out of a follow on email that was directly addressing 2 main issues raised in our phone discussion did not clearly state it was off the table. The two remaining issues that were being negotiated at the final hours were the cash payment schedule and the mutual releases regarding future legal actions regarding our employment and the bankruptcy petition.

Stephen, we do want to settle this agreement. We do not have a desire to torpedo any negotiations. When we found the draft agreement trying to wipe out other agreements (KVL technology license, Ron Earley loan, Ken Kayser deferred salary) for which we thought Tagnetics had agreed were independent of these negotiations since there was no push back on that portion of Ken Kaysers request, we felt blindsided. We see no reason why those cannot be left in full force and effect since they are triggered at much later events for the company which hopefully will be a significant successful event for Tagnetics. We are seeking a resolution to the one item that was brought before the court in this petition, our three employment agreements. Those were the obligations Tagnetics was not servicing and therefore put us in the position of petitioning creditors. Lets settle that in this settlement agreement and put this behind us. I dont want to draft a status report to the court other than we have come to an agreement but the final touches are being made.

On Mon, Aug 19, 2019 at 7:48 PM Stephen Stern <Stern@kaganstern.com> wrote:

Jon:

Many of the terms included below clearly fall outside the scope of what we agreed to the email exchange we had on July 26, 2019 at 3:56 pm and again at 3:58 pm.

Without going blow by blow, the terms of Paragraph 4 below clearly call for payments that were not included in the July 26 email exchange setting forth the settlement payments. Additionally, those requests for additional payments clearly seek an exception to the full mutual releases (no carve outs). I am not sure how you can now ask for payments that were not previously agreed to and seek exceptions to the full mutual releases (no carve outs).

2

As for Paragraph 5, Compass is a sizeable shareholder of Tagnetics. It is standard practice when entering into a settlement agreement that a release applies not only to the entity itself, but its parents, subsidiaries, and affiliates. This should come as no surprise at least to Ken, as the same exact language was included in the agreement Tagnetics entered into with KVL. As for the rest of your concerns about the scope of the release, the email exchange on July 26 is pretty clear – "[f]ull mutual releases (no carve outs)." All the exceptions you seek clearly contradict the terms of the term sheet we have. If you did not understand the terms, perhaps you should have sought legal counsel, as I had urged you to do on several occasions while we were negotiating.

As for the request for a default judgment, you are correct that we had discussed that at one point in time. And you are correct that it was in our email exchange on July 23 (three days prior to us entering into an agreement). At the time that Tagnetics offered the default judgment as a potential remedy in the event of a breach, however, Tagnetics offered only "a modest up front payment." At the time, we were discussing a potential "modest up front payment" that cumulatively paid the three of you less than $30,000. As you know, each of you insisted that you would not take less than $90,000 cumulatively up front to settle this case and that is the sum that Tagnetics ultimately agreed to pay. Hence, we did not revisit the default judgment issue.

I do not understand comment number 1 in Ron Earley's email (dated August 16 at 11:52 am) where he said that he does "not expect [his] $30,000 loan and accruing interest to be handled any different than any other company debt, but would like it acknowledged as surviving this agreement." It seems that Ron is asking for some additional payment or a carve out from the full mutual release. If that is the case, that is different than what we agreed to. If I am misunderstanding what is meant by Ron's comment, please clarify.

As for the capacities of the release (the last paragraph of Jon's email below), I think the release is clear and covers the issues you would like covered. If you think it does not, please tell me where you think it is not covered.

I can go on, but I think it would be best to try to get these issues resolved first. I urge you to revisit what we agreed to on July 26 and look at the requests you made in your email below (and Ron's email). We are prepared to file a motion to enforce the settlement agreement, but I hope it does not come to that.

I look forward to your response. If it would be more productive to discuss by phone, please let me know.

Stephen

**From:** Jon Hager <pufferboater@gmail.com>
**Sent:** Friday, August 16, 2019 2:19 PM
**To:** Stephen Stern <Stern@kaganstern.com>
**Cc:** Ken Kayser <drkwkayser@gmail.com>; Ronald Earley <ronald.earley1@gmail.com>
**Subject:** Settlement Agreement - Requested Changes

The following are changes that need to be addressed on the draft agreement. An attorney is reviewing it today also to evaluate some of the finer points. We would like to try and wrap this up today.

1) home address for Jonathan Hager needs to be corrected to 842 Paint Bank Rd, Salem, VA 24153

2) there needs to be language that the outstanding payments are all paid at the liquidity event. If a liquidity event occurs prior to payment #3, the outstanding funds should be part of that fourth payment.

3) there must be language about a default judgement if any payment is missed . You spoke to that in an email on July 23 but we do not see any language to that effect. As you said you want to show evidence Tagnetics is serious about the settlement.

4) At the start of the negotiations, an email from Ken Kayser on July 20 referenced some other agreements that he and Ron have with Tagnetics. He was not requesting that they their payment is accelerated through this agreement, in contrary he was requiring that this agreement did not cancel or affect those agreement. These agreements all had terms for payment upon the sale of Tagnetics and were not part of the Petition for Chapter 7. The Petition was filed due to unpaid salary as per our contracts. Ken and Ron do not want language in this agreement that forgives those other legal documents including a) loan between Ron Earley and Tagnetics for $30,000 which has been on the books for a few years, b) deferred salary agreement between Ken Kayser and Tagnetics that was agreed to upon the formation of the company, c) KVL Core Technology licence agreement (in one section it seems to states all license agreements are discharged and then in item 10 acknowledges the licence agreement is still in effect. Should include reference to the KVL Core Technology License.

5) The release items 4, 5 and 6 have some points in them that are not agreeable to all parties. This agreement is between Tagnetics and Kayser, Hager, Earley and does not need to specifically include Compass Marketing. If Compass is not an operating affiliate then they are not party to this settlement. Ken Kayser is not in agreement to include specific language in these releases including the Tagnetics release. This agreement was to resolve the dispute about our unpaid salaries as described in our employment agreements. These releases are taking very broad strokes that step outside these agreements trying to affect other agreements, loans, shareholders rights etc that are part of other independent agreements executed between Tagnetics and Kayser, Earley.

Ken Kayser requests you rephrase the releases to the language, or similar language, that he included in his email on July 20 stating a mutual release of all issues arising from our employment with Tagnetics, our role as directors of Tagenetics (Kayser, Earley). and our participation in the petition for involuntary bankruptcy.


--

Jon

540-529-6887



--
Jon
540-529-6887