**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| In re: Tagnetics, Inc. | * | Case No. 19-30822 |
| | * | |
| | * | Judge Humphrey |
| | * | Chapter 7 |

### TAGNETICS, INC.'S OPPOSITION TO MOTION TO
### HOLD TAGNETICS IN CRIMINAL CONTEMPT

Tagnetics, Inc. ("Tagnetics"), by and through its undersigned counsel, hereby submits this Opposition to the Motion to Hold Tagnetics in Criminal Contempt [Doc. # 181] filed by Jonathan Hager, Kenneth Kayser, and Ronald Early (collectively, the "Remaining Petitioning Creditors"). Tagnetics respectfully requests the Bankruptcy Court deny Remaining Petitioning Creditors' Motion to Hold Tagnetics in Criminal Contempt because, as explained in greater detail below, this Court does not have authority to issue criminal sanctions against Tagnetics (or its officers and directors) and, even if it does have such authority, a criminal sanction would not be appropriate under the circumstances of this case.

### PROCEDURAL HISTORY

This matter originated with the Remaining Petitioning Creditors (along with three other alleged creditors) filing a Petition for Involuntary Bankruptcy on or about March 19, 2019. As set forth in Tagnetics' Motion to Enforce Settlement Agreement [Doc. #101], the parties began engaging in settlement discussions in July 2019, which culminated in the parties reaching an agreement on the key terms of a settlement by July 26, 2019.

The Remaining Petitioning Creditors, however, refused to sign the settlement agreement largely (although not entirely) because they objected to the scope of the release contained in the

written agreement. Because the parties could not agree on the form of the written settlement agreement, Tagnetics filed a Motion to Enforce Settlement Agreement on September 13, 2019 [Doc. #101], which sought a finding that the scope of the release included related parties (*e.g.*, parent companies, subsidiaries, affiliates, officers, directors, executors) and, if the release did not include such parties, there was no meeting of the minds to enforce a settlement agreement.[1]

On or about October 25, 2019, the Bankruptcy Court granted Tagnetics' Motion to Enforce Settlement Agreement in part, holding the parties had a meeting of the minds regarding the terms of a settlement agreement, but the Bankruptcy Court found that the term "[f]ull mutual releases (no carveouts)" did not include related parties, such as affiliated entities [Doc. # 168]. On November 8, 2019, Tagnetics filed an Application for Attorneys' Fees as Compensatory Damages Pursuant to the Court's October 25, 2019 Order [Doc. #134] for having to file the Motion to Enforce. Tagnetics' Application for Attorneys' fees remains pending before the Bankruptcy Court.[2]

Tagnetics appealed the Bankruptcy Court's Order to the United States District Court for the Southern District of Ohio on or about November 15, 2019, specifically on the issue of whether the scope of the release language included individuals and entities related to the parties (*e.g.*, parent

---

[1] The Remaining Petitioning Creditors' position regarding the scope of the release is confounding and disingenuous, as *they conceded in writing* that the interpretation proffered by Tagnetics – that the scope of the release applied to related parties (*e.g.*, parent companies, subsidiaries, *affiliates*, officers, directors, and executors) – was correct. *See* Ex. 1 (Email from J. Hager to S. Stern dated August 16, 2019) (stating that "[i]f Compass [Marketing] is not an operating affiliate [sic] then they are not a party to this settlement"). This acknowledgement by the Remaining Petitioning Credits shows that they understood the scope of the release to be the same as Tagnetics' understanding and the release applied to affiliates (and other related parties), with the only dispute being whether Compass Marketing was an affiliate of Tagnetics (and the issue of whether Compass Marketing is an affiliate is no longer before this Court or any of the appellate courts).

[2] Tagnetics voluntarily suggested that the Court defer ruling on Tagnetics' Application for Attorneys' Fees until there is a final disposition on the matter regarding the scope of the release and whether there was a meeting of the minds.

companies, subsidiaries, affiliates, officers, directors, executors) and, if it did not, whether there was a meeting of the minds.

On or about November 21, 2019, the Remaining Petitioning Creditors filed a Motion to Hold Tagnetics in Indirect Contempt, arguing that Tagnetics failed to pay the first payment according to the settlement agreement within three (3) days of the Bankruptcy Court's October 25, 2019 Order [Doc. # 145]. The Remaining Petitioning Creditors asked the Bankruptcy Court to add 8% interest to the payments pursuant to the settlement agreement. Tagnetics opposed the Motion to Hold Tagnetics in Indirect Contempt [Doc #153]. On February 11, 2020, while Tagnetics' appeal was pending, the Bankruptcy Court granted the Remaining Petitioning Creditors' Motion to Hold Tagnetics in Indirect Contempt [Doc. #169]. As a remedy, the Bankruptcy Court ordered that Tagnetics pay all past due amounts, within thirty (30) days, plus interest at the federal rate to accrue from three (3) days following the Bankruptcy Court's October 25, 2019 Order. Further, the Bankruptcy Court ordered that, *should the past due payments not be made within thirty (30) days* starting 31 days after the February 11, 2020 order [Doc. #169], additional interest at the rate of 5% would accrue on the outstanding amounts, compounded monthly, until all outstanding amounts are paid.

On or about April 27, 2020, the United States District Court for the Southern District of Ohio entered an order affirming the Bankruptcy Court's October 25, 2019 Order [Doc. #180]. On May 19, 2020, the Remaining Petitioning Creditors filed the Motion to Hold Tagnetics in Criminal Contempt [Doc. # 181]. On May 26, 2020, Tagnetics filed a Notice of Appeal of the United States District Court for the Southern District of Ohio's April 27, 2020 Order to the United States Court of Appeals for the Sixth Circuit.

## ARGUMENT

The Remaining Petitioning Creditors' Motion to Hold Tagnetics in Criminal Contempt ("Contempt Motion") asks the Bankruptcy Court to hold Tagnetics in criminal contempt [Doc. #181].[3]  While specifically requesting a criminal contempt finding, the relief sought by the Remaining Petitioning Creditors was not specific, other than the Bankruptcy Court order "more drastic punitive measures" and suggesting that the Bankruptcy Court consider reducing and/or offsetting any attorneys' fees awarded to Tagnetics' against the final payment due to the Remaining Petitioning Creditors under the terms of the settlement agreement.  This Court, however, does not have authority to conduct a criminal proceeding and issue criminal contempt sanctions and, even if it did, such sanctions are not warranted under the circumstances of this case. For these reasons, which are explained in greater detail below, the Bankruptcy Court should deny the Remaining Petitioning Creditors' Motion to Hold Tagnetics in Criminal Contempt.

### A.  The Bankruptcy Court Lacks the Authority to Hold Tagnetics in Criminal Contempt

A threshold issue is whether the Bankruptcy Court has the authority to impose criminal contempt sanctions.  Although the Sixth Circuit has not specifically ruled on this issue,[4] the weight of authority from federal appellate courts, among other authority, including from within the Sixth Circuit, strongly favors finding that a bankruptcy court does not have authority to conduct a criminal proceeding or issue a criminal contempt sanction.

At least two federal appellate courts have reached the specific conclusion that a bankruptcy court lacks authority to issue criminal contempt findings.  One of those courts was the United

---

[3] It is unclear whether the Contempt Motion also seeks to hold the individual members of Tagnetics' Board of Directors and its officers in criminal contempt as well.

[4] It has noted that there is a split in authority on whether a bankruptcy court has the authority to impose a criminal contempt sanction.  *See In re Hake*, No. 06-8014, 2006 Bankr. LEXIS 248, *7-*13 (6th Cir. Oct. 3, 2006).

States Court of Appeals for the Fifth Circuit. *See Griffith v. Oles (In re Hipp)*, 895 F.2d 1503, 1509 (5th Cir. 1990). The Fifth Circuit explained that a criminal contempt prosecution is "'a separate and independent proceeding' from, and 'is not part of,' the case in which the violated order was issued." *Id.* at 1510, *see also id.* at 1517-18 (concluding that a criminal contempt proceeding "is not itself a 'core' proceeding" for adjudication by a bankruptcy court and it is not sufficiently related to a bankruptcy proceeding to justify its determination by a bankruptcy court). Indeed, "when Congress has intended non-Article III adjudicatory entities to possess criminal contempt powers, it has statutorily granted those powers[,]" but the powers of the bankruptcy courts do not include hearing criminal contempt proceedings, as bankruptcy courts are limited to hearing "core" matters. *Id.* at 1513-14. The Fifth Circuit also explained that a criminal defendant enjoys the presumption of innocence and must be proven guilty beyond a reasonable doubt, and no party can be compelled to testify against him/itself when facing criminal liability, which weighed against finding that a bankruptcy court can conduct a criminal contempt proceeding. *Id.* at 1509. Furthermore, the Fifth Circuit held that "bankruptcy courts do not have inherent *criminal* contempt powers, at least with respect to criminal contempts not committed in (or near) their presence." *Id.* at 1511 (emphasis in original).[5] As a result, the Fifth Circuit concluded that "there is no authority for the bankruptcy court to conduct the trial" of a criminal proceeding. *Id.* at 1520.

The United States Court of Appeals for the Ninth Circuit also reached the conclusion that a bankruptcy court is not authorized to conduct criminal proceedings or issue criminal sanctions. *See Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178 (9th Cir. 2003). Among other things, the Ninth Circuit found that Section 105(a) (which provides contempt authority to a bankruptcy court)

---

[5] The Fifth Circuit further explained that there are "serious constitutional issues" associated with allowing bankruptcy courts to hear criminal proceedings and issue criminal contempt sanctions, but it did not resolve those issues other than to interpret the 1984 Act as not granting bankruptcy courts such powers. *Id.* at 1511.

5

is "not a vehicle for enforcing other provisions of the bankruptcy code" and, because the "the remedies traditionally associated with 'compensatory civil contempt' are adequate to meet the goal[s] of §105(a), . . . 'no further remedy is necessary.'" *Id.* at 1190; *see also id.* at 1193 (citations omitted) (explaining that "Section 105(a) contains no explicit grant of authority to award punitive damages [but] authorizes only those remedies 'necessary' to enforce the bankruptcy code" and the civil contempt remedies offered by Section 105(a) "adequately meets that goal"). The Ninth Circuit further concluded that its interpretation of the limitations of Section 105(a) is reinforced by "fundamental due process considerations." *Id.* at 1193-94. One of the primary due process considerations is that any party accused of criminal contempt is entitled to numerous procedural protections, including the right to a jury trial. *Id.* at 1194 (citations omitted); *see also id.* at 1197 (explaining that '"when a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding,' including the right to a jury trial"). The Sixth Circuit, however, has determined that bankruptcy courts have no authority to conduct jury trials. *See In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1173-74 (6th Cir. 1992).

Beyond the Fifth and Ninth Circuits reaching clear conclusions that bankruptcy courts have no authority to conduct criminal proceedings, at least two other federal appellate courts have offered commentary in dicta that raise concerns about the authority of a bankruptcy court to conduct criminal proceedings and issue criminal sanctions. *See Eck v. Dodge Chem Co. (In re Power Recovery Sys.)*, 950 F.2d 798, 802 n.17 (1st Cir. 1991) ("Once again, to keep from committing hari-kari in my own circuit, I must point out that in the Fifth Circuit, bankruptcy courts lack the power to hold persons in criminal contempt") (internal citations omitted);[6] *United States*

---

[6] The First Circuit ultimately determined in *Eck* that the case before it was a civil contempt case, not a criminal contempt case. *Id.* at 803.

6

*v. Guariglia*, 962 F.2d 160, 163 (2d Cir. 1992) (noting "that there is a serious question as to whether the bankruptcy court would have had the authority to punish . . . for criminal contempt," but determining it did not need to resolve the issue).[7]

The only contrary authority is that of the United States Court of Appeals for the Eighth Circuit, but, even then, the Eighth Circuit has determined that a bankruptcy court's authority with respect to criminal contempt appears limited to making recommendations to another court (as opposed to imposing the sanction), which are subject to de novo review. *See Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1177-80 (8th Cir. 1993) (finding that bankruptcy courts are authorized to hear a criminal contempt proceeding and make proposed findings of fact to be reviewed de novo by the district court). The Eighth Circuit, however, seemed to back away from its ruling in *In re Ragar* a few years later, noting that there is a "serious question" as to whether bankruptcy courts have authority to issue criminal contempt sanctions. *See Sonse v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys.)*, 108 F.3d 881, 885 (8th Cir. 1997).[8]

Beyond the authority from other federal appellate courts that strongly weighs in favor of concluding that a bankruptcy court does not have authority to issue criminal contempt sanctions, there is additional authority from within this Circuit that supports this conclusion. In this regard, the Sixth Circuit cited favorably to the Fifth Circuit's decision in *In re Hipp* regarding a bankruptcy court's lack of authority to impose criminal contempt sanctions, and did so in the context of reaching the conclusion that a bankruptcy court has no authority to conduct jury trials. *See In re*

---

[7] The United States Court of Appeals for the Seventh Circuit has noted that the issue is unsettled. *Cox v. Zale Del., Inc.,* 239 F.3d 910, 916-17 (7th Cir. 2001) (noting "it is unsettled whether *bankruptcy* judges have criminal contempt powers") (emphasis in original).

[8] The United States Court of Appeals for the Tenth Circuit previously reached the conclusion that a bankruptcy court had authority to conduct criminal proceedings, but, in reaching this conclusion, it relied on Bankruptcy Rule 9020, which has since been repealed. *See Graham v. United States (In re Graham)*, 981 F.2d 1135 1142 (10th Cir. 1992) (citing the former Bankruptcy Rule 9020 governing criminal contempt proceedings, which was repealed in 2001).

*Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1173-74 (6th Cir. 1992). In addition, a bankruptcy court in Michigan also has concluded that a bankruptcy court lacks authority to issue a criminal contempt sanction. *See In re Lawrence*, 164 B.R. 73, 74-75 (W.D. Mich. 1993) (concluding the Sixth Circuit's favorable citation to *In re Hipp* in *In re Baker & Getty Fin. Servs.* "was controlling of its disposition of this matter" where it concluded that a bankruptcy court cannot conduct a criminal proceeding).

Based on the weight of authority overwhelmingly favoring the conclusion that a bankruptcy court lacks authority to issue criminal contempt sanctions, this Court should likewise conclude that its authority is limited to civil sanctions and it does not have authority to conduct a criminal proceeding or issue criminal contempt sanctions. As such, the Remaining Petitioning Creditors' Motion should be denied.

### B.     A Criminal Contempt Finding is Otherwise Inappropriate

Assuming *arguendo* that the Bankruptcy Court concludes that it has authority to hold Tagnetics in criminal contempt, such a sanction is not appropriate in this case. As an initial matter, criminal contempt is a crime and, thus, must be proved beyond a reasonable doubt following a jury trial. Here, it cannot be proved beyond a reasonable doubt that Tagnetics willfully defied this Court's authority or that it is seeking to avoid its obligations. Indeed, there are several factors that weigh substantially in Tagnetics' favor in this regard.

First, Tagnetics initially appealed this Court's underlying decision regarding the Motion to Enforce to the United States District Court for the Southern District of Ohio [Doc. #124-2] and it is continuing its appeal to the Sixth Circuit [Doc. #17].[9] In other words, the issue regarding the

---

[9] The docket number for the appeal to the Sixth Circuit is from the proceeding before the United States District Court for the Southern District of Ohio.

scope of the release or whether there was a meeting of the minds has not reached a conclusion and is not yet resolved.

Second, Tagnetics specifically requested that an appeal bond be issued and even asked the Court to establish a sum for the appeal bond to avoid any concern that it would not fulfill its obligations while appealing this matter, but the Court denied Tagnetics' request to issue an appeal bond [Doc. #119].

Third, although no appeal bond has been set, Tagnetics has paid the Remaining Petitioning Creditors the interest as ordered by the Court in its February 11, 2020 order [Doc. #169]. *See* Exhibit 2 (Checks Kenneth Kayser, Ronald Earley, and Jonathan Hager). These interest payments reflect interest accrued through June 23, 2020, and they alone demonstrate that Tagnetics recognizes the authority of this Court and is willing to pay a price for its delayed payment until its appeal(s) is exhausted.

Fourth, the civil contempt order entered by the Court requires that the increased interest rate apply to "all future sums due under the Settlement Enforcement Order." *See* Doc. #169. Thus, the current and operative contempt sanction is still in effect and continues to compound interest on the outstanding sums allegedly due to the Remaining Petitioning Creditors, which Tagnetics understands it is obligated to pay if the current outcomes remain in effect. In other words, the Court already contemplated and implemented a remedy in the event that Tagnetics does not pay the first installment to the Remaining Petitioning Creditors. As a result, the Bankruptcy Court's goal of incentivizing compliance with its order remains and continues to increase the financial return for the Remaining Petitioning Creditors until (a) all payments under the settlement agreement that are past due are made in full, or (b) Tagnetics prevails on its appeal, which may

9

invalidate any sums owed to the Remaining Petitioning Creditors in their entirety. Put another way, the Bankruptcy Court's current sanction against Tagnetics is continuing in nature.[10]

Fifth, as the Court correctly cited in its February 11, 2020 decision, "'the drastic nature of contempt sanctions' requires that the court use those powers 'only in clear and urgent instances.'" (internal citations omitted) [Doc. # 168, p.6]. The instant circumstance is no more urgent than at the time the Bankruptcy Court first sanctioned Tagnetics. Here, it is important to keep in mind that Tagnetics is pursuing this matter on appeal and the appeal is still pending – and, should Tagnetics prevail on its current appeal, there is a substantial likelihood that the amounts the Remaining Petitioning Creditors now seek may be invalidated in their entirety. Moreover, Tagnetics has already paid the sanction that the Court imposed. Furthermore, because the Bankruptcy Court has imposed a sanction that is continuing in nature on the unpaid sums, it is Tagnetics, not the Remaining Petitioning Creditors, that bears the risk of failing to timely pay. In other words, the circumstances that existed at the time of the original civil contempt order remain the same and there is no greater urgency now than there was before.

Because Tagnetics is not willfully defying this Court's authority or seeking to avoid its obligations, a criminal contempt sanction is not appropriate. Moreover, because the instant factual circumstances present no more urgency than at the time the Bankruptcy Court entered its finding of civil contempt, and Tagnetics is currently subject to a civil contempt sanction that is continuing in nature, a criminal contempt sanction also is not appropriate. Thus, even if this Court has the

---

[10] As noted above, Tagnetics has paid the interest due on the outstanding payments through June 23, 2020, and Tagnetics plans to continue making periodic interest payments on outstanding balances until its appeal is exhausted.

authority to issue criminal contempt sanctions, such a sanction would not be appropriate under the circumstances of this case.[11]

## CONCLUSION

For the forgoing reasons, this Court does not have authority to impose criminal contempt sanctions and, even if it did, such a sanction is not appropriate in this case. Thus, the Remaining Petitioning Creditors' Motion should be denied.

Dated: June 12, 2020                Respectfully submitted,

                                                    /s/ Stephen B. Stern
                                  Stephen B. Stern, Admitted Pro Hac Vice
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, MD 21401
(410) 216-7900 – Telephone
(410) 705-0836 - Facsimile
stern@kaganstern.com (email)

*Counsel for Alleged Debtor Tagnetics, Inc.*

---

[11] Contemporaneous with the filing of this Opposition, Tagnetics filed a Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics, which provides further details of the unique circumstances related to this proceeding and further explains why additional sanctions against Tagnetics are not warranted. To that end, Tagnetics incorporates herein its Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics.

## CERTIFICATE OF SERVICE

      I hereby certify that on June 12, 2020, a copy of the foregoing Opposition to Motion to Hold Tagnetics in Criminal Contempt was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email to Kenneth W. Kayser. (drkwkayser@gmail.com), Ronald E. Early (ronald.earley1@gmail.com) and Jonathan Hager (pufferboater@gmail.com), and (iii) by **First Class U.S. Mail** on June 12, 2020 to Kenneth Kayser and MaryAnne Wilsbacher at the addresses below, and (iv) FedEx to Ronald Earley and Jonathan Hager at the addresses below:

Kenneth W. Kayser
PO Box 115
Catawba, VA 24070

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

                                                    */s/ Stephen B. Stern*
                                                    Stephen B. Stern