**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| In re: Tagnetics, Inc. | * | Case No. 19-30822 |
| | * | |
| | * | Judge Humphrey |
| | * | Chapter 7 |

---

**TAGNETICS, INC.'S MOTION TO CONDUCT DISCOVERY RELATED TO TORTIOUS CONDUCT DIRECTED AT TAGNETICS**

---

Tagnetics, Inc. ("Tagnetics"), by and through its undersigned counsel, hereby submits this Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics. The motions for contempt (both civil and criminal) filed by Kenneth Kayser, Ronald Earley, and Jonathan Hager (collectively, the "Remaining Petitioning Creditors") are, in fact, disingenuous, as their conduct betrays a motivation greater than simply collecting payment from Tagnetics. Rather, as explained below, it appears that the Remaining Petitioning Creditors are exploiting the proceedings in this case to inflict substantial economic harm on Tagnetics, as well as affiliates of Tagnetics that are not a party to this proceeding. Under these circumstances, discovery of the substantial tortious conduct engaged in by the Remaining Petitioning Creditors both prior to and after the alleged settlement agreement was reached is necessary.[1]

---

[1] Although Tagnetics filed a Motion to Enforce Settlement Agreement, as the Court is aware, if the terms of the settlement do not include a release of related parties, Tagnetics believes there was no meeting of the minds and, thus, no settlement agreement was reached, which is why Tagnetics is referring to it as the "alleged" settlement agreement. As the Court also is aware, Tagnetics has filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit regarding the Motion to Enforce Settlement Agreement.

## FACTUAL BACKGROUND

1. On May 27, 2020, this Court entered an order [Doc. #182] setting an evidentiary hearing on June 25 to address the Remaining Petitioning Creditors' Motion to Hold Tagnetics in Criminal Contempt and their alleged desire to obtain payment from Tagnetics.

2. Three days later, on May 30, 2020, before undersigned counsel even had received the May 27, 2020 order, an email from a so-called Frank Columbo,[2] using a "protonmail.com" email address, attached a copy of the Court's May 27 order to a number of executives at Duracell, with the subject line reading "Powershelf Tagnetics Compass Marketing Update." *See* Exhibit 1 (Email from F. Columbo to Numerous Duracell Executives dated May 30, 2020 at 2:43 a.m.).

3. A second email from the same email "protonmail.com" email address was sent on June 2, 2020 to Duracell executives; this time without attaching the Court's order and, instead, including excerpts of the order in the body of the email, also with the subject line reading "Powershelf Tagnetics Compass Marketing Update." *See* Exhibit 2 (Email from F. Columbo to Numerous Duracell Executives dated June 2, 2020 at 6:24 p.m.).

4. Duracell is a customer under contract with Compass Marketing, Inc. ("Compass Marketing"), and Compass Marketing is an affiliate of Tagnetics. *See* Doc. #101-5 (explaining how Compass Marketing is an affiliate of Tagnetics). Duracell also was a customer of Tagnetics, and Ronald Earley, one of the Remaining Petitioning Creditors, attended a ceremony at a Walmart location when Tagnetics' products were installed for Duracell at Walmart.

5. Yet another email, similar to the one sent on June 2, 2020, was sent from the same "protonmail.com" email address on June 8, 2020 to an executive at Microsoft with the subject line stating, "Tagnetics Powershelf Compass Marketing Update." *See* Exhibit 3 (Email from F.

---

[2] We assume Frank Columbo is an alias, being used by a fan of the old television show about the detective played by Peter Falk.

Columbo to W. Barrett dated June 8, 2020 at 1:48 a.m.). Microsoft is a customer under contract with Compass Marketing.

6. There is no legitimate purpose for the sender of these emails to identify Compass Marketing in the subject line, as Compass Marketing is not a party to this bankruptcy proceeding and it was not mentioned in the Court's order. The only plausible explanation is to ensure that as much damage as possible is inflicted on Tagnetics and the companies that do business with Tagnetics, including its affiliate, Compass Marketing.[3]

7. Even more compelling evidence of improper motive is the fact that Protonmail is an email service that houses its servers in Switzerland so that Swiss privacy laws may protect the identity of its users. In order to attract customers, Protonmail boasts that: (1) "[n]o personal information is required to create your secure email account[;]" (2) it "cannot decrypt and read your emails[,]" which means that an account holder's emails "cannot be shared with third parties[;]" and (3) it possesses no "IP logs which can be linked to your anonymous email account." *See* https://protonmail.com/ (last visited June 10, 2020). In other words, Protonmail caters expressly and almost exclusively to email customers who want their true identity to remain concealed.

8. The fact that an anonymous source, who wished to remain anonymous, and used Protonmail to send the emails discussed above, strongly suggests that the source understood that, by sending negative information to customers of Compass Marketing, it was engaged in improper, tortious conduct. The fact that the materials sent to Compass Marketing customers include records from this bankruptcy proceeding also strongly suggests that the identity of the source of the emails either is one or more of the Remaining Petitioning Creditors, or that the Remaining Petitioning

---

[3] While Compass Marketing is an affiliate of Tagnetics under Ohio law, it also has a service agreement to help promote Tagnetics' products to its customers.

Creditors are working with, or know who that source is. In any event, the source of these emails is using this proceeding to try and cause substantial harm to Tagnetics and the companies that do business with or have an interest in Tagnetics, and discovery of the Remaining Petitioning Creditors' knowledge of these efforts is warranted.

9. The Protonmail emails, however, only scratch the surface of how the Remaining Petitioning Creditors have made a mockery of this bankruptcy proceeding and sought to use this proceeding as a tool to inflict substantial economic harm on Tagnetics and Compass Marketing. In this regard, efforts to destroy Tagnetics and Compass Marketing have been ongoing since at least October 2019 (after the alleged settlement agreement was reached), and likely before.

10. On October 17, 2019, an email was sent to John White (CEO of Tagnetics) from the CEO of a company that had signed a term sheet with Tagnetics to make a substantial (multimillion dollar) investment in Tagnetics. *See* Exhibit 4 (Email from Redacted Executive to J. White dated October 17, 2019 at 5:27 p.m.).[4] The subject of the line of the email stated, "Tagnetics bankruptcy proceedings." *Id.* In that email, the executive of the company that planned to invest in Tagnetics stated that "[i]t came to [his] attention today that an involuntary chapter 7 bankruptcy proceeding was filed against Tagnetics Inc." *Id.* The email also stated that it was the CEO's understanding that "*Tagnetics has referenced to that such non-binding term [sheet] in settlement discussions between Tagnetics and certain petitioning creditors in the bankruptcy case*, and that Tagnetics may seek to introduce the term sheet or otherwise disclose its contents in that proceeding." *Id.* (emphasis added).[5]

---

[4] The terms of that term sheet are confidential and, thus, Tagnetics is not at liberty to disclose the details of the term sheet, including the party that entered into the term sheet with Tagnetics. In addition, any exhibits referencing the terms of the term sheet or the party to the term sheet have been redacted accordingly to maintain confidentiality.

[5] Tagnetics adamantly denies disclosing the terms of the term sheet to the Remaining Petitioning Creditors during settlement negotiations.

4

11. In addition to disclosing confidential business information that caused substantial harm to Tagnetics (the transaction with the investor did not close after the investor was led to believe that Tagnetics breached its duty of confidentiality under the agreement), a number of filings in this bankruptcy proceeding have been distributed by U.S. Mail to people who conduct business with Tagnetics and/or Compass Marketing, all with the obvious intent to cause further harm to Tagnetics and Compass Marketing.

12. For example, an executive at Colgate-Palmolive Company received a package in the U.S. mail that included what purported to be a letter to Tagnetics' shareholders, several filings from this bankruptcy proceeding, and other documents that seek to disparage John White and/or the businesses he operates. The letter to shareholders made many false representations, including, but not limited to, "[i]t appears that our board has agreed to allow Tagnetics to go into bankruptcy." *See* Exhibit 5 (Email from K. Frisch to J. White dated October 17, 2019 at 5:35 p.m., with attachments).[6] While this Motion is not the forum in which to litigate each of the many false representations in that letter, at the very minimum, it should be obvious on its face that Tagnetics has not "agreed to allow Tagnetics to go into bankruptcy[,]" because Tagnetics has fought this bankruptcy proceeding vigorously to avoid having Tagnetics placed in bankruptcy.

13. Also by way of example, an excerpt of the Court's May 27 order was mailed to Tagnetics' CFO, Lou Fernandez (at his home address), with an excerpt of the declaration from Mr. Fernandez that was filed in this case [Doc. #101-5] and a typed note that states, "Are you still an Officer of Tagnetics/Powershelf ???" *See* Exhibit 6 (Mailing to L. Fernandez). The note to Mr. Fernandez indicates a cc copy of the package was delivered to Your Honor (the note states, "Cc:

---

[6] To reduce the volume of paper submitted to the Court, of the attachments included in Exhibit 5, Tagnetics included only the email that forwarded to John White that attached the materials Ms. Frisch received in the mail, the purported letter to Tagnetics shareholders, and the filings from this litigation; other enclosures were omitted.

Judge Humphrey"). *Id.* Also noteworthy is the fact that the return address on the envelope sent to Mr. Fernandez is the same return address from South Carolina on materials previously sent to this Court and which led this Court to issue an Order Concerning Documents Received by the Court on February 3, 2020. *See* Doc. #162.

14. A package similar to the one sent to Mr. Fernandez also was sent to the home of Marty Monserez, a Compass Marketing executive. *See* Exhibit 7 (Mailing to M. Monserez). As with the package sent to Mr. Fernandez, the note sent to Mr. Monserez indicates Your Honor received a cc copy of the mailing, and it also came from the same return address in South Carolina as the mailings to Mr. Fernandez and this Court. *Id.*

15. In addition to sending filings from this case to attack/disrupt customer and employee relationships with Tagnetics and Compass Marketing, similar mailings of copies of documents from a Virginia proceeding have been mailed from the same South Carolina return address as the mailings related to this litigation. *See, e.g.*, Exhibit 8 (Mailing to Jane Staples).[7] For example, a complaint seeking judicial dissolution of Compass Marketing was filed by Daniel White and Michael White in Virginia against Compass Marketing and John White, and a copy of that complaint was mailed to Jane Staples of State Farm Insurance, a vendor to Compass Marketing. *Id.*[8] Notably, the objective of the Virginia action is similar to the objective of this action – forcing the entity that is the subject of the action (Compass Marketing in Virginia, Tagnetics in this Court) to go out of business. *Id.*

---

[7] To reduce the volume of paper submitted to the Court, of the attachments included in Exhibit 8, Tagnetics included only the complaint and civil information sheet from the Virginia proceeding and omitted other enclosures.

[8] Similar to materials related to this proceeding, the materials related to the Virginia action contain numerous false and disparaging statements, but this Motion is not the forum to rebut each of the many false assertions in that case.

16. These are mere samples of more than 50 mailings (whether in hard copy or electronic) that Tagnetics (together with Compass Marketing) has been able to identify where matters related either to this proceeding or the Virginia proceeding have been mailed and/or emailed to individuals and/or businesses that conduct business with Tagnetics and/or Compass Marketing.

## ARGUMENT

17. It has become apparent that it is not enough for the Remaining Petitioning Creditors to simply try to obtain payment from Tagnetics pursuant to the alleged settlement agreement, but they are taking actions to further damage Tagnetics and its affiliates (after reaching the alleged settlement agreement – the same settlement agreement they claimed they did not enter into).

18. Based on the foregoing, it should be abundantly clear that the Remaining Petitioning Creditors have played at least some role in using this proceeding to sabotage Tagnetics and Compass Marketing. It defies logic and common sense to think these acts of sabotage are being perpetrated solely by a person/entity who is simply following this bankruptcy proceeding from afar and uninvolved in this litigation, especially when the CEO of the company who was about to invest substantial sums into Tagnetics informed Tagnetics that "*Tagnetics has referenced to that such non-binding term [sheet] in settlement discussions between Tagnetics and certain petitioning creditors in the bankruptcy case*, and that Tagnetics may seek to introduce the term sheet or otherwise disclose its contents in that proceeding." *See* Ex. 4.

19. In their successful efforts to sabotage the transaction with the potential investor, the Remaining Petitioning Creditors misused confidential business information, either in the form of

their knowledge of the potential transaction, information exchanged in the settlement discussions, or both.[9]

20. It also is abundantly clear that the Remaining Petitioning Creditors are trying desperately to cover their tracks and hide from their conduct (*e.g.*, utilizing a "protonmail.com" email address to send disparaging materials to customers of Compass Marketing, and sending "anonymous" mailings, purportedly from South Carolina).

21. Tagnetics could not in good conscience pay the sums due to the Remaining Petitioning Creditors pursuant to the alleged settlement agreement while the matter remains on appeal and while the Remaining Petitioning Creditors continue their scheme to inflict further damage to Tagnetics and its affiliate, Compass Marketing. That said, Tagnetics is acutely aware of its obligations to this Court, does not want to violate further any orders of this Court, and, thus, is seeking discovery to get clarity on this crucial issue before any further order on this matter is imposed.[10]

22. While Tagnetics (together with Compass Marketing) fully intends to pursue separate legal action against the Remaining Petitioning Creditors for the tortious and other unlawful conduct they have committed, they should be held accountable by this Court for abusing the role and purpose of this Court and this proceeding. To that end, the Remaining Petitioning Creditors should be required to disclose all communications and efforts they have undertaken that refer, reflect, or relate the acts of sabotage set forth in this Motion and other related acts of

---

[9] It is unclear how the Remaining Petitioning Creditors knew about the term sheet, as that information was not disclosed during settlement negotiations. Presumably, they improperly gained access to such information by virtue of their roles as former directors of Tagnetics.

[10] As noted in the Opposition to Hold Tagnetics in Criminal Contempt, Tagnetics has paid the civil penalty imposed by this Court to show it is not simply disregarding this Court's authority, and it intends to continue paying interest on past due sums under the Court's order until its appeal is exhausted and finally resolved.

sabotage.[11] To this end, the Court should grant this Motion and allow Tagnetics to conduct discovery (prior to conducting any further evidentiary hearing regarding Tagnetics' failure to pay the first installment of the alleged settlement) and compel the following:

    a. The Remaining Petitioning Creditors to submit their computers, mobile devices and other electronic equipment/storage devices for forensic inspection to determine the presence of a Protonmail app and to identify any and all communications related to this proceeding (the Remaining Petitioning Creditors are not represented by counsel and, thus, there is no risk of breaching privilege), the Virginia proceeding, and any communications to any person or entity that has or had any business relationship with Tagnetics or Compass Marketing.

    b. The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy (*i.e.*, paper), with any current or former director of Tagnetics.

    c. The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy (*i.e.*, paper), with any current or former customer of Tagnetics or Compass Marketing.

    d. The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy

---

[11] As noted above, Tagnetics (together with Compass Marketing) have identified at least 50 other mailings (whether hard copy or in electronic form) with false and/or misleading information related to this proceeding and/or the Virginia proceeding. It is reasonable to expect that the 50+ incidents identified by Tagnetics (together with Compass Marketing) are not the only incidents that occurred, and Tagnetics should have the right to learn about each and every incident the Remaining Petitioning Creditors know about.

9

        (*i.e.*, paper), with any current or former vendor of Tagnetics or Compass Marketing.

e.      The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy (*i.e.*, paper), with any current or former employee of Tagnetics or Compass Marketing.

f.      The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy (*i.e.*, paper), about this proceeding.

g.      The Remaining Petitioning Creditors identify and produce each and every communication they have had, either orally, electronically, or in hard copy (*i.e.*, paper), about the Virginia proceeding.

h.      The Remaining Petitioning Creditors be deposed under oath to answer questions regarding the matters set forth in this Motion.

i.      The time frame for items (a) through (g) above should be from December 1, 2018 through the present.

## CONCLUSION

For the forgoing reasons, this Court should grant this Motion and grant Tagnetics the discovery it seeks to further uncover the acts of sabotage perpetrated or at the very least aided by the Remaining Petitioning Creditor.

Dated:  June 12, 2020 　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Stephen B. Stern*
　　　　　　　　　　　　　　　　　　　　　　　　Stephen B. Stern, Admitted Pro Hac Vice
　　　　　　　　　　　　　　　　　　　　　　　　KAGAN STERN MARINELLO & BEARD, LLC
　　　　　　　　　　　　　　　　　　　　　　　　238 West Street
　　　　　　　　　　　　　　　　　　　　　　　　Annapolis, MD 21401
　　　　　　　　　　　　　　　　　　　　　　　　(410) 216-7900 – Telephone
　　　　　　　　　　　　　　　　　　　　　　　　(410) 705-0836 - Facsimile
　　　　　　　　　　　　　　　　　　　　　　　　stern@kaganstern.com (email)

　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Alleged Debtor*
　　　　　　　　　　　　　　　　　　　　　　　　*Tagnetics, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 12, 2020, a copy of the foregoing Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email to Kenneth W. Kayser. (drkwkayser@gmail.com), Ronald E. Early (ronald.earley1@gmail.com) and Jonathan Hager (pufferboater@gmail.com), and (iii) by **First Class U.S. Mail** on June 12, 2020 to Kenneth Kayser and MaryAnne Wilsbacher at the addresses below, and (iv) FedEx to Ronald Earley and Jonathan Hager at the addresses below:

Kenneth W. Kayser
PO Box 115
Catawba, VA 24070

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

                                                                   */s/ Stephen B. Stern*
                                                                      Stephen B. Stern