**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| In re: Tagnetics, Inc. | * | Case No. 19-30822 |
| | * | |
| | * | Judge Humphrey |
| | * | Chapter 7 |

**TAGNETICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO CONDUCT
DISCOVERY RELATED TO TORTIOUS CONDUCT DIRECTED AT TAGNETICS**

Tagnetics, Inc. ("Tagnetics"), by and through its undersigned counsel, hereby submits this Reply in Support of its Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics [Doc. #190]. Kenneth Kayser, Ronald Earley, and Jonathan Hager (collectively, the "Remaining Petitioning Creditors") filed a "Response" in opposition (the "Opposition") to Tagnetics' Motion [Doc. #196] that seeks to obfuscate the issues but ultimately lacks merit in every respect. One argument in the Remaining Petitioning Creditors' Opposition warrants a brief response from Tagnetics, however. In this regard, the Remaining Petitioning Creditors contend that the discovery sought by Tagnetics "contain[s] confidential information concerning conduct, strategy, and work product for this case which [the Remaining Petitioning Creditors] consider privileged." As explained below, none of the information sought by Tagnetics in its Motion [Doc. #190] can be protected by any privilege and, thus, Tagnetics' Motion should be granted.

As an initial matter, it should be noted that the Remaining Petitioning Creditors do not identify which privilege(s) they seek to apply to prevent the disclosure of the information sought by Tagnetics. This is significant because the party seeking to invoke the protection of a privilege has the burden of demonstrating the privilege applies. *See Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App. 3d 653, 735 (2003). Tagnetics does not see how the Remaining Petitioning

Creditors can prevail in this regard when the Remaining Petitioning Creditors do not (and cannot) even identify the specific privilege(s) upon which the Remaining Petitioning Creditors rely.

Tagnetics can only assume that the Remaining Petitioning Creditors seek to prevent disclosure of the information sought based on the attorney-client privilege and/or work product doctrine.[1]  The Remaining Petitioning Creditors, however, have proceeded *pro se* since the inception of this proceeding, which precludes application of the attorney-client privilege and work product doctrine.

It should not be surprising that the attorney-client privilege, codified as Ohio Revised Code 2317.02(A), generally precludes the disclosure of communications between an *attorney* and client related to the attorney's representation of that client.  As the plain meaning of the statutory provision suggests, the privilege attaches when a client engages the attorney.[2]  Similarly, Ohio recognizes the work product doctrine and allows a party to seek protection from disclosing certain documents during discovery that would reveal the mental impressions and strategies of that party's attorney (and, even then, such material may be produced in certain circumstances).  *Burnham v. Cleveland Clinic*, 151 Ohio St. 3d 356, 361 (2016).[3]

Tagnetics has not found any authority directly analogous to this matter that would allow a *pro se* party to seek protection of the attorney-client privilege and/or work-product doctrine.  In fact, to the contrary, the United States District Court for the Southern District of Ohio has held that

---

[1] Other potential privileges include, but are not limited to, spousal privilege, physician-patient privilege, and, to some degree, and the accountant-client privilege, but none seemingly have any relation to or bearing on the issues presented in the Remaining Petitioning Creditors' Opposition.

[2] The Remaining Petitioning Creditors all reside in Ohio and Virginia.  While Tagnetics believes that Ohio law would govern any claim of privilege, Virginia recognizes the application of the attorney-client privilege under similar circumstances as Ohio.  *See Commonwealth v. Edwards,* 235 Va. 499, 508-09 (1988) (noting Virginia recognizes the attorney-client privilege in situations where "confidential communications *between an attorney and client* [are] made because of that relationship and concerning the subject matter of the attorney's employment") (emphasis added).

[3] Virginia also recognizes the work-product doctrine.  *See* Va. Sup. Ct. R. 4:1(b)(3).

a *pro se* party objecting to discovery on the grounds of attorney-client privilege and/or work product doctrine "lack[s] even a colorable basis." *See Svete v. Wunderlich*, Civil Action 2:07-CV-156, 2009 U.S. Dist. LEXIS 49801, *4 (S.D. Ohio June 11, 2009) ("Many of the objections asserted by plaintiff lack even an arguably colorable basis.  For example, plaintiff, who is proceeding *pro se*, invokes the attorney-client privilege or work product doctrine.").

As noted above, the Remaining Petitioning Creditors have proceeded *pro se* (i.e., without representation of counsel) since the outset of this case.  Under such circumstances, it should be axiomatic that the Remaining Petitioning Creditors cannot rely on the attorney-client privilege or the work product doctrine to prevent disclosure of the discovery sought by Tagnetics.

Perhaps the Remaining Petitioning Creditors seek the protection of the attorney-client privilege and/or work product doctrine because they have secretly retained one or more unidentified attorneys to represent them in this matter.  If that is the case, however, such an arrangement would raise a host of other problems for the Remaining Petitioning Creditors and their presently unidentified counsel, as it would appear that the unidentified attorney(s) has been "ghostwriting" the Remaining Petitioning Creditors' filings in this case.

"Ghostwriting of legal documents by attorneys on behalf of litigants who state that they are proceeding pro se has been held to be inconsistent with the intent of procedural, ethical and substantive rules of the Court." *Ostevoll v. Ostevoll*, No. C-1-99-981, 2000 WL 1611123, *9 (S.D. Ohio Aug. 16, 2000) (citing *Laremont-Lopez v. Southeastern Tidewater Opp. Ctr.*, 986 F. Supp. 1075, 1077 (E.D. Va. 1997)).  Relying on *Laremont-Lopez,* the court in *Ostevoll* went on to state that, "if a pleading is prepared in any substantial part by a member of the bar, it must be signed by him [or her]." *Ostevoll*, 2000 WL at *9.  Otherwise "ghostwriting" would "unfairly exploit[] the mandate that pleadings of pro se litigants be held to a less stringent standard than pleadings drafted

3

by lawyers" and it would "effectively nullif[y] the certification requirements of [Rule 11 of the Federal Rules of Civil Procedure]." *Id.* (quoting *Laremont-Lopez*, 986 F. Supp. at 1078). Allowing an attorney to avoid these requirements would run afoul of ABA Model Code of Responsibility DR I-102(A)(4), which states that "an attorney should not engage in conduct involving dishonesty, fraud, deceit or misrepresentation." *Id.* (citing *Ricotta v. State of California*, 4 F. Supp. 2d 961 (S.D. Cal. 1998)). The potential presence of an attorney supporting the Remaining Petitioning Creditors behind the scenes would be entirely consistent with the scenario suggested by Tagnetics, as it would further connect this bankruptcy with a larger strategy of impairing Tagnetics and its affiliates, and it would be yet another topic on which the Remaining Petitioning Creditors should provide discovery under oath.

As noted above, the Remaining Petitioning Creditors bear the burden of demonstrating that any privilege would apply. *Cargotec,* 155 Ohio App. 3d at 735. To even attempt to carry this burden, the Remaining Petitioning Creditors must, at a minimum, produce a privilege log that identifies each communication/document they seek to protect from disclosure, the date(s) of the communication/document, the sender/recipient of the communication, and a description of the substance of the communication. *See* Ohio R. Civ. P. 26(A)(6)(a) (stating that "[w]hen information subject to discovery is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim"); *see also Cargotec*, 155 Ohio App. 3d at 735 (stating that a privilege log must at least "state that communications were made between attorney and client for the purpose of procuring legal advice or representation" and finding that the privilege log provided by the party seeking to withhold materials needed to further elaborate on

4

the parties involved in the communications and the description of the communications at issue). To date, the Remaining Petitioning Creditors have not provided any such privilege log.

Finally, it should be reiterated and emphasized that Tagnetics is seeking discovery related to tortious acts taken by the Remaining Petitioning Creditors and any other person/entity with whom they conspired/collaborated to engage in this conduct. Such discovery would not involve privileged communications/documents and, even if it did, such protection would be forfeited by the alleged attorney's participation in the tortious conduct. *See Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2013 U.S. Dist. LEXIS 147765, *16-17 (S.D. Ohio Oct. 11, 2013) (holding that "Ohio courts have, and will continue to, analyze wrongful conduct not strictly falling into the category of either crimes or frauds on a case-by-case basis to determine if the conduct involves similar elements of malicious or injurious intent and deliberate falsehood. If it does, there is no reason why the law should prevent disclosure of the role an attorney may have played in assisting his or her client to commit that type of act, which itself has no social value").[4]

For these reasons, as well as those articulated in Tagnetics' Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics, the Motion should be granted and Tagnetics should be permitted to obtain discovery related to the role played by the Remaining Petitioning Creditors in the tortious conduct directed at Tagnetics.

---

[4] To the extent that the Remaining Petitioning Creditors are concerned about private, personal matters being disclosed, Tagnetics is not interested in such information and there are a number of ways in which discovery can be crafted to enable Tagnetics to obtain the information/documents it seeks while also preventing Tagnetics from utilizing or disclosing such private, personal material if it were inadvertently discovered.

Dated June 24, 2020

Respectfully submitted,

_____/s/ Stephen B. Stern_____
Stephen B. Stern, Admitted Pro Hac Vice
Kagan Stern Marinello & Beard, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900 – Telephone
(410) 705-0836 – Facsimile
stern@kaganstern.com (email)

*Counsel for Alleged Debtor*
*Tagnetics, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 24, 2020, a copy of the foregoing Reply in Support of Tagnetics, Inc.'s Motion to Conduct Discovery Related to Tortious Conduct Directed at Tagnetics was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email to Kenneth W. Kayser. (drkwkayser@gmail.com), Ronald E. Early (ronald.earley1@gmail.com) and Jonathan Hager (pufferboater@gmail.com), and (iii) by **First Class U.S. Mail** on June 24, 2020 to Kenneth Kayser, Ronald Earley, Jonathan Hager, and MaryAnne Wilsbacher at the addresses below:

Kenneth W. Kayser
PO Box 115
Catawba, VA 24070

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

                                              */s/ Stephen B. Stern*
                                                 Stephen B. Stern